William H. GLEASON, Appellant,

v.

The TITLE GUARANTEE COMPANY,
Appellee.

No. 18998.

United States Court of Appeals
Fifth Circuit.

March 30, 1962.

Charles Cook Howell, William M Howell, Jacksonville, Fla., Erskine W. Landis, DeLand, Fla., Howell, Kirby, Montgomery & Sands, Jacksonville, Fla., Hull, Landis, Graham & French, DeLand, Fla., of counsel, for appellant.

Earl D. Waldin, Jr., David W. Dyer and Louis S. Bonsteel, Miami, Fla., Smathers, Thompson & Dyer, Miami, Fla., of counsel, for appellee.

Before TUTTLE, Chief Judge, and JONES, and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

The plaintiff, The Title Guarantee Company of Baltimore, Maryland, sued William H. Gleason, a title examining attorney, for damages sustained when various mortgages that it had guaranteed as first mortgages, in reliance on Gleason's certification of clear title, proved to be subordinate to certain other mortgages. Gleason appeals from a summary judgment for the plaintiff. We affirm, subject to a redetermination of damages.

The Title Guarantee Company does business in Florida and has local representatives to handle details of the transactions. The thirteen mortgages involved in this action were handled for the plaintiff by either Sun Coast Home Title Company or Guardian Title Company. These companies selected Gleason from a list of attorneys previously approved by Title Guarantee to make title examinations and verify that the mortgages to be guaranteed were not subordinate to any other mortgages. Gleason introduced substantial testimony showing that during the summer of 1956, when these transactions occurred, there was great activity in real estate in Brevard, Florida, because of the construction of great national facilities at Cape Canaveral. The county recording office was swamped with filings to the point that its indices were several weeks behind. It was therefore virtually impossible to make a complete up-to-the-minute search of a title. Nevertheless, for each mortgage Gleason signed a written certification that he had made "a personal examination of all public records, which contain any or all information pertaining to or affecting the title to the real estate described * * * or of an abstract purporting to contain the contents of all such records. * * *" In his testimony, Gleason acknowledged that he had not in fact examined either the public records or a written abstract but had relied, at least in part, on information given him over the telephone by the abstract company. He acknowledged also the impossibility of his having made the examination that his written certification indicated he had made. He argued, however, that it was customary in Brevard County, Florida, at that time, for lawyers to make certifications of title as he had done, and that he had informed agents of the plaintiff of the basis on which he was making the certifications.

The thirteen mortgages involved here were executed by P. A. Cutri Company and were sold either to J. I. Kislak Mortgage Corporation of Florida or to the First National Bank of Dunedin, Florida. When it was discovered that these mortgages were not valid first mortgages, Title Guarantee stepped in and purchased the superior mortgages at a cost of $83,-979. It obtained a summary judgment against Gleason in that amount and tendered to the district court the collateral it acquired in removing the prior liens. The court ordered this collateral delivered to Gleason upon satisfaction of the judgment.

While custom provides an important indication of what constitutes reasonable care and what is negligent, it is not dispositive of the question at issue. The T. J. Hooper, 2 Cir., 1932, 60 F.2d 737. All customs are not good customs, and lawyers have no prescriptive right to make knowingly false statements in the name of custom. "No degree of antiquity can give sanction to a usage bad in itself." [1] We can sympathize with the defendant in the fact that he is to be heavily penalized for following the custom while others, perhaps even those who established the custom, may escape adverse consequences. Nevertheless, the custom was improper, and its existence cannot alter Gleason's responsibility to one who has relied on his certification. Gleason should have realized that Title Guarantee in Baltimore would rely on the certification and perhaps would suffer losses because of it.

Gleason's second contention is that Title Guarantee cannot say that it relied on his written representation since he informed its agents of the manner in which he was makng his title examination. The defect in this argument is that there is not enough evidence showing that Gleason did inform agents of Title Guarantee to take the case to the jury. Gleason makes much of the testimony that he told Paul Low of Kislak that a complete title examination could not be made. Low, however, was not an agent of Title Guarantee. Kislak wanted to purchase

1. Yates and Ashton, J. J., Leach v. Three of the King's Messengers, 19 How.St. Trials 1027 (1765).

the first mortgages, and once they were to be insured Kislak could not be hurt by the presence of outstanding superior liens. Kislak's interest was really at odds with that of Title Guarantee, since Kislak would naturally tend to want Gleason not to worry about loose ends but to push the transactions through. Disclosure to Low therefore could not bind Title Guarantee.

Gleason also asserts that he made disclosure to a Mr. Pebbles of Sun Coast. There are two difficulties in the evidence on this point; it is not clear even from Gleason's testimony either that Pebbles was an agent of Sun Coast or that Gleason disclosed to him that he had not made a complete title search. Gleason first testified that he had talked with "Mr. Register, Mr. Flower, Mr. Pebbles, and Mr. H. H. Grant of the mortgage department of the Dunedin Bank." He then stated that these people were "connected with" Sun Coast and the Dunedin Bank, and two mortgages were introduced which Pebbles had signed as the authorized agent of Sun Coast. Although Pebbles appears to have acted in behalf of Sun Coast in some respects, it seems that his principal position was with the Dunedin Bank. The Bank of course stood in the same position as Kislak and had an interest in pushing through the mortgage insurance that opposed the interest of Title Guarantee. Gleason stated that he "disclosed the situation" to Mr. Pebbles "to the best of [his] recollection." The court sought to clarify the testimony:

"The Court: That is a little too broad. The statement you made about the difficulties. The answer to his question calls for a broad answer. The point is, did you let these people, the mortgage people which you were working for know that you were making examinations, not on your own part, but depending on title companies?

"The Witness: Based on a written abstract.

"The Court: Based on a written abstract for personal examination, or doing it the way you were doing it?

"The Witness: Yes, sir, I did."

The testimony is still wholly ambiguous. The witness's "Yes, sir, I did" answer to the judge's either-or question is meaningless. More than that, this testimony seems to refer only to the reliance on the abstract company and does not indicate that the abstract company's information was itself not up to date. Since Gleason's disclosure argument is an affirmative defense, the burden of proof rests on him to introduce substantial evidence to prove the alleged facts. This is not a case where the evidence is in conflict and therefore must be resolved by the jury. Here the appellant's only evidence is equivocal and irresolute. It does not furnish a sufficient basis for a finding that would relieve Gleason of responsibility for his written statements. The summary judgment against the appellant on these points was therefore not improper.

Although Gleason cannot escape responsibility for the losses suffered by Title Guarantee on these mortgages, he has a valid objection to the measure of damages assessed against him by the district court. Gleason argues that he should be held liable only for the plaintiff's demonstrable losses. The court below charged him with the entire amount, $83,979, expended by Title Guarantee in acquiring the superior liens, and directed that the collateral acquired by the plaintiff should be delivered to Gleason when he satisfied the judgment. This order is out of line with the established rule that the tort or contract liability of a party is limited to the difference in value between what the plaintiff's property is worth and what it would be worth but for the fault of the defendant. We have found no precedent for requiring the defendant in effect to purchase the property from the plaintiff, as the judgment below directs. Gleason is entitled to have the value of the collateral established by evidence or fixed by sale and deducted from the losses that he must pay. Although this question involves a matter of procedure that ought not to influence significantly Gleason's ultimate liability, the

law does place on the plaintiff the burden of defining and proving his losses. Weekley v. Knight, 1934, 116 Fla. 721, 156 So. 625.

The judgment is affirmed insofar as it decides that the defendant is liable for the losses suffered by the plaintiff, and the case is remanded for a redetermination of damages.