452 F.2d 124
 16 A.L.R.Fed. 1, 1971 Trade Cases P 73,754
 Lester J. ALBRECHT, Appellee,
v.
The HERALD COMPANY, a Corporation, d/b/a Globe-Democrat
Publishing Company, Appellant.
The HERALD COMPANY, a Corporation, d/b/a Globe-Democrat
Publishing Company, Appellee,
v.
Lester J. ALBRECHT, Appellant.
 Nos. 71-1017, 71-1041.
 United States Court of Appeals,
Eighth Circuit.
 Nov. 17, 1971.
Rehearing and Rehearing En Banc Denied Dec. 28, 1971.
 
 Mortimer A. Rosecan, Rosecan & Popkin, St. Louis, Mo., and Gray L. Dorsey, Chesterfield, Mo., for Lester J. Albrecht.
 Lon Hocker, St. Louis, Mo., Tobias J. Bermant, New York City, for appellee, cross-respondent, Globe-Democrat; Hocker, Goodwin, Koenig, Gibbons & Fehlig, St. Louis, Mo., Sabin, Bermant & Blau, New York City, of counsel.
 Before VOGEL, Senior Circuit Judge, and GIBSON and LAY, Circuit Judges.
 GIBSON, Circuit Judge.
 
 
 1
 This is the third appearance of this antitrust controversy before us. The plaintiff, while a contract carrier for the defendant, a newspaper publisher in St. Louis, Missouri, hereafter referred to as Globe-Democrat or defendant, persisted in charging the subscribers on his exclusive paper route more than the suggested retail price set by the publisher. The Globe-Democrat upon receiving complaints from some of the subscribers tried to induce plaintiff to adhere to the suggested maximum retail price. Although Globe-Democrat had the right under its carrier contract to decline selling papers to plaintiff upon refusal of plaintiff to adhere to the suggested maximum,[1] it first tried oral persuasion and failing in that it attempted to force compliance by competing with the plaintiff on his own route and actively soliciting customers of the plaintiff. As a result of defendant's actions, plaintiff was finally forced to sell his route for $12,000. A jury in the original action found defendant innocent of violating Section 1 of the Sherman Act, 15 U.S.C. Sec. 1. We affirmed on appeal in Albrecht v. Herald Co., 367 F.2d 517 (8th Cir. 1966).
 
 
 2
 The Supreme Court, after granting certiorari, reversed in a 7-2 decision, holding that the undisputed facts showed a combination to fix a maximum resale price, which as a matter of law was per se illegal under United States v. Parke, Davis & Co., 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), and remanded the case for further proceedings consistent with that opinion. Albrecht v. Herald Co., 390 U.S. 145, 88 S.Ct. 869, 19 L.Ed.2d 998 (1968).
 
 
 3
 The factual details are reported in the above cases and will not be repeated here except where necessary to a discussion of the issues presented on retrial.
 
 
 4
 In the interim the defendant filed a complaint seeking to convene a three-judge district court to determine the issues of the alleged unconstitutionality of the treble damage provision of 15 U.S.C. Sec. 15. Senior District Judge Duncan dismissed that complaint on the basis that it lacked substantiality. Herald Co. v. Harper, 293 F.Supp. 1101 (E.D.Mo.1968). Upon appeal, we affirmed. Herald Co. v. Harper, 410 F.2d 125 (8th Cir. 1969). The matter then proceeded to trial before Chief Judge Meredith of the Eastern District of Missouri on the issue of damages. In addition to the issue of damages, defendant in the District Court again sought to invoke the protection of the Fifth Amendment against double jeopardy on the ground that the verdict of the jury in the first trial finding no antitrust violation protected it against another proceeding to assess treble damages for the same offense. This identical issue had been decided adversely to defendant in Herald Co. v. Harper, supra.
 
 
 5
 The damage issue was submitted in three parts: (1) plaintiff's damage prior to sale, consisting of profits lost in the operation of the business by reason of Globe-Democrat's competition; (2) the difference between the fair market value of plaintiff's business (with all of his customers intact) at the time of the sale and the actual sale price received; and, (3) loss of future profits following the forced sale. The Court directed the jury to find in favor of plaintiff on the first two items and permitted a finding on item three upon a determination of certain hypotheses relating to the conduct of the defendant. The jury returned a verdict for plaintiff on all three items in the respective amounts of $2,000, $12,000 and $57,000.
 
 
 6
 The District Court in considering a motion for a new trial and for judgment n. o. v. reduced the award on loss of profits prior to the sale to $1313, allowed the award of $12,000 representing the difference between the amount plaintiff received from the sale of the route and the fair market value of the route as reconstituted with all of the customers taken away by defendant, and reduced the loss of future profits award to $14,768. Judgment was entered for treble damages, plus attorneys' fees of $50,000. Albrecht v. Herald Co., 321 F.Supp. 99 (D.C.1970). Both parties have appealed.
 
 
 7
 There is no serious disagreement on item one. The damages on item two are not contested by the defendant, and this sum appears to be the maximum that could have been allowed by the jury on the evidence adduced in the case.[2] The defendant contends, however, that the third item of damages, loss of future profits, was duplicitous of the second item of damages awarding the fair market value of the reconstituted route. The plaintiff argues that not only is he entitled to loss of future profits as found by the trial court, but that the jury verdict of $57,000 on this item of damages should be reinstated.
 
 
 8
 At the outset plaintiff challenges the jurisdiction of the District Court to enter a judgment n. o. v. because the defendant did not file a motion for a directed verdict at the close of all the evidence, citing the general rule set forth in Godwin v. Brown, 249 F.2d 356, 363 (8th Cir. 1957), holding "Only a party who has first made a motion for a directed verdict may, under Rule 50(b), Federal Rules of Civil Procedure, move for a judgment notwithstanding the verdict." To the same effect are many cases cited in 2B Barron & Holtzoff, Federal Practice and Procedure, Sec. 1079, for the proposition that a motion for judgment n. o. v. may not be entertained unless a motion for a directed verdict was made at the close of all the evidence. This is the general rule but that rule is not applicable to this situation.
 
 
 9
 In the first place, the trial judge asked the parties for their written objections to his proposed charge which in the posture of this case was directed solely to the issue of damages. The defendant objected to the charge on the basis that it did permit a double recovery, compensation for the full fair market value of the reconstituted route and prospective future earnings. Memorandums were submitted on this issue and, while defendant's objections were not sustained, the trial judge recognized clearly the issue of duplicity in damages in his memorandum granting in part the n. o. v. motions, where he states, "It may very well be argued that all of item number 3 should be deleted for the reason that it is included in the sale price of the paper route * * *." 321 F.Supp. at 101.
 
 
 10
 Secondly, the remand from the Supreme Court finding for the plaintiff on liability as a matter of law left only the issue of damages. The defendant could no longer properly contest the issue of liability, nor as a practical matter could it contest the fact that some damages would have to be found by the jury. Thus a motion for directed verdict at the close of all the evidence would not only have been a useless act but would have been contumacious of the Supreme Court's remand and our remand in connection therewith. We find no merit in plaintiff's contention on this procedural issue. The question of duplicate damages was clearly presented to the trial court.
 
 
 11
 Defendant contends that an award for loss of future profits in addition to an award allowing the full value of plaintiff's business reconstituted with the full complement of 1200 customers and viewed as a going concern constituted a double recovery which when trebled would be a sixfold award of actual damages. Defendant's chief reliance, aside from the seeming logic of its contention, rests on the cases of Standard Oil Co. v. Moore, 251 F.2d 188 (9th Cir. 1957), cert. denied, 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148 (1958); Simpson v. Union Oil Co., 411 F.2d 897 (9th Cir.), cert. denied in part and granted in part and judgment reversed, 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed.2d 13 (1969); Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61 (1st Cir. 1969).
 
 
 12
 The plaintiff predicates his claim for the item three damage on Twentieth Century Fox-Film Corp. v. Brookside Theater Corp., 194 F.2d 846 (8th Cir.), cert. denied, 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1348 (1952); Osborn v. Sinclair Refining Co., 324 F.2d 566 (4th Cir. 1963); Atlas Building Products v. Diamond Block & Gravel Co., 269 F.2d 950 (10th Cir. 1959), cert. denied, 363 U.S. 843, 80 S.Ct. 1608, 4 L.Ed.2d 1727 (1960); Lessig v. Tidewater Oil Co., 327 F.2d 459 (9th Cir.), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964).
 
 
 13
 The pertinent part of 15 U.S.C. Sec. 15 reads:
 
 
 14
 "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor * * * and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."
 
 
 15
 The damages referred to in the statute should be construed in the ordinary common law context as compensating plaintiff in full for the preventable and established loss sustained by reason of tortious or proscribed acts. The general rule in property damage cases, as stated in Gleason v. Title Guarantee Company, 300 F.2d 813, 815 (5th Cir. 1962), is "* * * that the tort or contract liability of a party is limited to the difference in value between what the plaintiff's property is worth and what it would be worth but for the fault of the defendant."
 
 
 16
 In Twentieth Century Fox-Film Corp. v. Brookside Theater Corp., 194 F.2d 846 (8th Cir. 1952), the Court on a general verdict of damages allowed the loss of future profits under the following facts: The plaintiff had a 15-year lease on a motion picture theater in 1936. It spent $34,000 on furnishings, equipment and decorations. The defendants by their concerted action refused to furnish plaintiff suitable motion pictures on non-discriminatory terms and conditions, making a successful operation for the plaintiff impossible and thus forcing plaintiff to sell out to one of the conspirators. Over the objection of the defendants, the court allowed evidence of the profits made in the theater's operation after the sale for the remainder of the lease. The court did not try to reconstitute the value of the theater operation with its 15-year lease under circumstances where the plaintiff would be free of the proscribed acts of the defendants, but rather fixed the date of damage as of the time of the involuntary sale and instructed the jury that if the sale was "brought about by the tortious conduct of defendants, it might then consider as a factor or element of damage, lost profits." The court further told the jury that it might consider the evidence of lost profits, "not as fixing the measure of damages but along with all other testimony," and further instructed that such profits are not necessarily the measure of damages but simply a circumstance and an element to be taken into consideration.[3] This circuit affirmed on appeal, holding that reasonably anticipated future profits were a proper item for consideration and a recovery may be had therefor, but "No hard and fast rule for ascertaining such profits can be laid down but they must be determined according to the circumstances of each case." 194 F.2d at 854-855. The court in Twentieth Century Fox obviously was not considering the fair market value of the business as a going concern free of restrictive acts of the defendants. The plaintiff's business was virtually destroyed. The evidence of future earnings would be one method of calculating its present worth, free of the restrictive acts of the defendants. The jury there found that the plaintiff's business was damaged at the time of the forced sale to the extent of $375,000, presumably representing the value of that business with its physical assets of furnishings and equipment in the amount of $34,000 plus the value of the 15-year operating lease together with good will and value as an operating and going concern free of the restrictive practices of the defendants. We do not view this case as authorizing an award of loss of prospective future profits in addition to receiving an award of the full value of a going business concern free of any restrictive acts of the antitrust defendant.
 
 
 17
 In Osborn v. Sinclair Refining Co., 324 F.2d 566 (4th Cir. 1963), the court sustained a finding of $12,000 actual damages to a filling station owner by a tie-in arrangement for the sale of Goodyear products, thus shutting off his market to handle competing products. The tie-in arrangement was a per se violation of Sec. 1 of the Sherman Act, 15 U.S.C. Sec. 1. The plaintiff's lease was canceled because he did not handle enough of the tie-in products. Sinclair was sued for treble damages under Sec. 4 of the Clayton Act, 15 U.S.C. Sec. 15. The court held that Sinclair's conduct went beyond a mere announcement of a policy of price maintenance and a mere refusal to deal, and therefore was not within the narrow limits of the Colgate case allowing a suggested price and refusal to deal with those not adhering to such price. The court went on to hold that the cancellation of the dealership for reasons prohibited by the antitrust statutes entitled plaintiff to recover all damages resulting from the proscribed action. The court, without discussing in detail the method of ascertaining damages, held that the District Court's finding of actual damages of $12,000, presumably based upon one-year's operation under the lease, was not clearly erroneous and added to this amount $325 damages occurring prior to the refusal to deal. We do not view this case as standing for the proposition that a plaintiff is entitled to a long term or lifetime loss of profits from his business in addition to the fair market value of his business as a going concern free of the restrictive practices found violative of the antitrust statutes.
 
 
 18
 In Atlas Building Products v. Diamond Block & Gravel Co., 269 F.2d 950 (10th Cir. 1959), the damages resulting from discriminatory prices were calculated upon a reconstruction of what the injured plaintiff's profits might have been but for the price discrimination. The jury was instructed that it could consider any profits that may have been lost by plaintiff in its business and also consider "the extent to which the value of appellee's profit or the net worth of its assets had been diminished as a result of the price discrimination ." The court held this did not constitute double damages for wrongful acts, commenting, "We think both loss of profits in business and diminishment of the assets were proper elements of damage." 269 F.2d at 959. We are in agreement with the holding and think that it only authorized the recovery as allowed in items one and two of the instant case. The loss of prior profits is covered in item one and the diminishment of the value of the assets as a going business was fully recompensed in item two.
 
 
 19
 In Lessig v. Tidewater Oil Co., 327 F.2d 459 (9th Cir. 1964), the court held that the refusal to give a requested instruction that the lessee of a service station could recover reasonably anticipated profits lost as a result of cancellation of his lease and dealer contract constituted prejudicial error. The lower court had only allowed plaintiff to recover profits lost during the occupancy of the station, which losses were "relatively meager and tenuous." The Ninth Circuit held plaintiff should have been allowed the value of reasonably likely net future profits as of the date of the cancellation. There was no allowance for damages to his business as such or any damages predicated upon the sale of the business as a going concern free of the restrictive practices proscribed by the antitrust statutes.
 
 
 20
 To summarize then the cases relied on by the plaintiff, we think it can be fairly said that none of these cases allowed a plaintiff damaged by an antitrust violation to recover both the value of the business as a going concern at the time of the damage and future profits of that business after the time of the damage. The future profits which were allowed in those cases were used as a method of calculating the damage to the value of the businesses involved because no other reliable method of valuing the business was presented. However, in the instant case we have clear proof in the record of the value of plaintiff's business as a going concern, and that value must necessarily take into consideration its future profit-earning potential. Thus, we think that the cases relied on by the defendant, which allow the plaintiff to recover the going-concern value of his business, but not future profits in addition, are applicable to the instant case.
 
 
 21
 In Standard Oil Co. v. Moore, 251 F.2d 188 (9th Cir. 1958), the court held in remanding the case for retrial that the plaintiff was entitled to receive the "going concern" or "good will" value of his filling station business at the time the proscribed acts of the defendant (in failing to supply petroleum) destroyed that business. The age of the owner was held to be irrelevant. Good will included past profits over and above an amount fairly attributable to the return on the capital investment and to the labor of the owner and the reasonable prospect of the continuance of additional profit in the future. These were factors which would be considered by a prospective purchaser.
 
 
 22
 "The special value which the business might have to Moore [the plaintiff], or the profit potential of the business beyond that which would be transferable to a purchaser, would have no effect on market value of the business." Id. at 220.
 
 
 23
 In Simpson v. Union Oil Company of California, 411 F.2d 897 (9th Cir. 1969), the court affirmed the award of a new trial on damages, and again held that plaintiff was not entitled to recover damages for the period of his life expectancy and that earnings were only material insofar as they had a bearing on the market value of the business, holding:
 
 
 24
 "The issues should have been, what was the value of the business, what money did appellant have invested in it, what was its net income after deducting a fair return on capital and fair compensation to appellant for his work, what were the prospects of continual renewals of the lease and finally, if illegal restraints were removed, what were the prospects of additional profits from the business as it became better established. These are the factors that a willing buyer would consider in determining fair market value of the business." Id. at 909-910.
 
 
 25
 Further, the damage to a going business was not a personal injury or damage which would deprive the owner of all earning power of his services, but:
 
 
 26
 "The proper measure of damage was the market value of the business, i. e. the value of the good will of an operating business, and not the loss of earning power by appellant for his life time.
 
 
 27
 ******
 
 
 28
 * * *
 
 
 29
 "The earnings from the station were only material insofar as they had a bearing on the market value of the business. Except in this respect, appellant's earnings were totally irrelevant." 411 F.2d at 909.
 
 
 30
 In Farmington Dowel Products Co. v. Forster Mfg. Co., 421 F.2d 61 (1st Cir. 1970), a price discrimination case where plaintiff was forced out of business, the court allowed loss of past profits and the going concern value of the business, reasoning:
 
 
 31
 "The district court-correctly, we believe-confined Farmington to lost profits from 1956 to February 28, 1958, the date when Farmington, went out of business, plus the 'going concern' value of Farmington on that date. * * * [T]his method seems an adequate basis for giving full relief to the injured plaintiff * * *; its lost profits to the time of cessation of business and the value which the business would have had at that time but for Forster's illegal actions.
 
 
 32
 ******
 
 
 33
 * * *
 
 
 34
 "* * * Moreover, it seems crystal clear to us that lost profits for that period [from the cessation of business to the time of trial] could not be properly awarded in addition to 'going concern' value on February 28, 1958. To do so would result in a clear duplication: Farmington would get its present value as a going concern plus its future profits, but the latter figure would be a major element in determining the former figure. The Clayton Act gives treble damages, but it does not contemplate that damages will be sextupled." 421 F.2d at 81-82.
 
 
 35
 The Court in Farmington distinguished Twentieth Century Fox as follows:
 
 
 36
 "That case did take account of lost profits for a period after the time that the plaintiff had been driven out of business. However, critical distinctions exist. First, * * * the business in that case was continued in essentially the same form by one of the defendants, * * *. Secondly, that court did not make an award for * * 'going concern' value, which is what Farmington seeks here. Finally, to the extent that the court may have awarded what could be called the 'going concern' value of the plaintiff there, it was figured as of the day that the plaintiff had been forced out of business." Id. at 81 n. 46.
 
 
 37
 It is our opinion that the plaintiff has received all permissible damages under items one and two, damages occasioned prior to the sale and the full market value on the sale of his route as a going concern, free of the restrictive practices. This value is figured on the basis of his reconstituted route with all 1200 customers. Fair market value would be that price a willing seller could secure from a willing buyer, and the evidence establishes $24,000 as the maximum price obtainable. Plaintiff has thus been made whole on his actual damages and further compensated as a matter of congressional policy by receiving treble damages. He is not entitled to sell the route, receive full compensation therefor, and still receive the profits the route might have made over his reasonable work-life expectancy. The trial judge did cut these damages down to future losses occurring after the sale for a period of three years. We feel this also is duplicitous. The prospect of future earnings is considered in arriving at the fair market value of a given business. Here undoubtedly the value of the route rested not in its tangible assets of an old truck and paper wrapper (valued $600) but in the exclusive contract for distribution of a well regarded newspaper in a given area. Whatever that fair market value might be, plaintiff has received it. Capitalizing and discounting future profits is one method of figuring present value, but this does not mean that a person is entitled to present value plus future profits. Certainly the antitrust laws in dealing with damages are not intended to give a person a life annuity in addition to whatever actual damage a party might have suffered in his business property. The injury is to the business and not to the person. The statutory penalty of trebling actual damages and allowing substantial attorney fees satisfies the purpose and policy of the antitrust statutes.
 
 
 38
 The second issue raised by defendant relates to the applicability of the double jeopardy clause of the Fifth Amendment to a private antitrust action. The defendant contends that since it received in effect a verdict of not guilty on the antitrust charge from a jury in the original trial it is being twice put to jeopardy for the same offense. This same issue was presented in a separate suit in Herald Co. v. Harper, 410 F.2d 125 (8th Cir. 1969) and ruled adversely to the defendant in this case. That decision reached the merits of the defendant's contention and is controlling in this case.
 
 
 39
 Both sides request an adjustment of attorneys' fees, agreeing that attorneys' fees should be commensurate with the award and the time spent.[4]
 
 
 40
 Since we are reversing part of the judgment, a reduction in attorneys' fees might be appropriate and would ordinarily be made if this were the initial appeal in this case. The matter, however, has been vigorously contested, which defendant, of course, has the right to do, but the volume of litigation relative to the subject matter of this antitrust complaint, including the other suit filed, compel us to conclude that the allowance made by the District Court should not be disturbed by us.
 
 
 41
 The award on items one and two as allowed by the District Court is affirmed and the award on item three is reversed. The case is remanded for entry of a judgment consistent with this opinion.
 
 
 
 [1]
 This practice was approved within certain limits set forth in United States v. Colgate & Co., 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1918)
 
 
 [2]
 The undisputed evidence showed that plaintiff paid $11,000 for his route in 1956 and sold it for $12,000 on October 31, 1964. The purchaser in addition paid $3,600 for the 300 customers served by another carrier, which customers were originally part of the plaintiff's route. The plaintiff testified he could have sold the route for $24,000 if the route had embraced all of the 1200 customers, and was guaranteed to be exclusive
 
 
 [3]
 The instruction in part read:
 "'Such profits are simply one of the elements to be taken into consideration in determining plaintiff's damages, if any. That is between the period of November 20, 1937, and the end of the lease. It is simply one of the factors which you may take into consideration together with all of the other facts and circumstances in arriving at a determination of the amount of damages you may find and believe from the evidence was sustained by plaintiff to its business and property."' 194 F.2d at 854.
 This instruction points out that the allowable damage was to be calculated as it pertained to the business and property and not the personal loss that the plaintiff might feel he had sustained.
 
 
 [4]
 Under 28 U.S.C. Sec. 2106:
 "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, * * * and direct the entry of such appropriate judgment * * * as may be just under the circumstances."