**POLLOCK & RILEY, INC., Plaintiff-Appellee,**

v.

**PEARL BREWING COMPANY, Defendant-Appellant.**

**W. H. WOOD, Plaintiff-Appellant,**

v.

**GULF OIL CORPORATION, Defendant-Appellee.**

**Nos. 73–3771, 74–1661.**

United States Court of Appeals, Fifth Circuit.

Aug. 15, 1974.

Rehearing and Rehearing En Banc Denied Nov. 22, 1974.

Keith E. Kaiser, J. Burleson Smith, San Antonio, Tex., for Pearl Brewing Co.

James R. Warncke, John Oliver, San Antonio, Tex., for Pollock & Riley, Inc.

Jack N. Price, Longview, Tex., Allen Moore, Odessa, Tex., Charles M. McDonald, Waco, Tex., for Wood.

W. B. Edwards, William F. Erwin, Jr., Catherine C. McCulley, Houston, Tex., for Gulf Oil Corp.

Before TUTTLE, WISDOM and GEE, Circuit Judges.

**TUTTLE, Circuit Judge:**

On review are consolidated interlocutory appeals in two civil anti-trust actions. The primary issue before the Court is the appropriateness of advising the jury that under the provisions of 15 U.S.C.A. § 15[1] any awarded damages would be tripled and a reasonable attorneys' fee plus the cost of the litigation granted.

## FACTS

Prior to the voir dire of the jury and the commencement of the trial, in the first named case, Pollock & Riley, Inc. v. Pearl Brewing Co., the plaintiff-appellee, Pollock & Riley, Inc., filed a motion in limine requesting that the district court instruct the defendant-appellant and all defense witnesses to refrain from referring or alluding to, in the presence of the jury, the treble damage and attorneys' fee provision of the Clayton Act. The district court granted appellee's motion. Appellant has entered an appeal from the district court's interlocutory order under 28 U.S.C.A. § 1292(b) on this single question.

The second suit, Wood v. Gulf Oil Corp., poses three questions determined by an interlocutory order of the district court and appealed under 28 U.S.C.A. § 1292(b). During pretrial matters, the plaintiff-appellant, Wood, filed a motion in limine to restrict any reference at any stage of the trial to the treble damage provision of the anti-trust laws. Defendant-appellee, Gulf Oil Corp., opposed the motion, asking the court to in-form the jury of the treble damage provision. The district court denied the motion, ruling that the jury should be so advised. In this same interlocutory order, the district court granted partial summary judgment for the appellee on the question of liability for the loss of future net profits, good will, and the fair market value of the plaintiff's service station equipment, and denied appellant's proffer of evidence admitted in the case of Lehrman v. Gulf Oil Corp., 464 F.2d 26 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972), involving a similar anti-trust suit against Gulf.

## TREBLE DAMAGE INSTRUCTIONS

■ The identical question before this Court in both cases is whether a district court should advise the jury in a civil anti-trust suit of the provision tripling the awarded damages and allowing attorneys' fees and costs. There is direct conflict in the district court decisions before us—one district court forbade revelation, and the other ordered that the jury be informed.[2] Having considered the policies and reviewed the authorities carefully, we hold that the jury should not be advised of the mandatory tripling provision of 15 U.S.C.A. § 15.[3]

The primary policy supporting our decision is that underpinning the tripling provision itself. The purpose of treble damages is to deter violations and encourage private enforcement of the

1. This provision states:

   "Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the costs of suit, including a reasonable attorneys' fee."

2. This conflict is more significant and demanding of a resolution because both deci-sions are from district courts in the same district, the Western District of Texas.

3. See Semke v. Enid Automobile Dealers Association, 456 F.2d 1361 (10th Cir. 1972); Sablosky v. Paramount Film Distributing Corp., 137 F.Supp. 929 (E.D.Penn.1955); Webster Motor Car Co. v. Packard Motor Car Co., 135 F.Supp. 4 (D.D.C.1955), rev'd. on other grounds, 100 U.S.App.D.C. 161, 243 F.2d 418, cert. denied, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1957). Contra Bordonaro Brothers Theaters v. Paramount Pictures, 203 F.2d 676 (2d Cir. 1953); Cape Cod Food Products v. National Cranberry Association, 119 F.Supp. 900 (D.Mass.1954).

anti-trust laws.[4] The justifiable fear of anti-trust plaintiffs is that the juries will adjust the damage award downward or find no liability, therefore thwarting Congress's purpose, because of some notions of a windfall to the plaintiff. One court has even suggested that a jury might take the revelation of the treble damage provision as an intimation from the court to restrict the amount of damages.[5] In sum, we agree with the Court of Appeals for the Tenth Circuit[6] that informing a jury would serve no useful function and its probable consequence would be harmful—an impermissible lowering of the amount of damages.

■ Second, it is not for the jury to determine the amount of a *judgment*. Its function is to compute the amount of *damages*. Congress's authorization in 15 U.S.C.A. § 15 to triple the award of damages is a matter of law to be applied by the district court without interference from the jury. The fact that the awarded amount will be tripled has no relevance in determining the amount a plaintiff was injured by the anti-trust violation.

The basic point urged against this holding is jury confusion. It is asserted that the treble damage feature of the anti-trust law has been publicized enough so that jurors might have some knowledge of it. The argument goes that a little knowledge without a complete explanation from the court will result in totally erroneous verdicts and damage awards.[7] Our immediate reaction is that a district court can sufficiently instruct the jury to determine only *actual* damages. In those cases

where an accidental revelation occurs, the court can give curative instructions to alleviate confusion. *Cf*. Standard Industries, Inc. v. Mobil Oil Corp., 475 F. 2d 220 (10th Cir.), cert. denied, 414 U.S. 829, 94 S.Ct. 61, 38 L.Ed.2d 63 (1973).

## WOOD v. GULF OIL CORPORATION

In Wood v. Gulf Oil Corp., the plaintiff-appellant is alleging violations of the anti-trust law which give rise to damages at two different times. First, the appellant sets out various actions alleged to constitute anti-competitive practices which occurred while the appellant was *doing business* as a service station dealer for Gulf Oil Corp. and which gave rise to post losses for plaintiff during this period. Second, the plaintiff alleges specifically that Gulf's threats not to renew his lease forced him to sell his service station resulting in loss of future profits, good will, and the fair market value of his service station equipment. The district court granted partial summary judgment against the appellant on the latter claim of Gulf's liability for loss of future profits, good will, and fair market value of the service station equipment. The appropriateness of the granting of the partial summary judgment is now before the Court on interlocutory appeal. We reverse.

Clarification of our holding can be derived from an examination of the district court's language in its partial summary judgment order. The court first ruled on what issues would be left open for trial:

"The extent of the threats, if any, of the Defendant, the nature of those threats, the period covered by the al-

---

4. *See* Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 751–752, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947); Comment, Private Triple Damage Anti-Trust Suits: Measure of Damages for Destruction of All or Part of a Business, 80 Harv.L.Rev. 1566, 1566–67 (1967) (hereinafter cited as Treble Damages).

5. Webster Motor Car Co. v. Packard Motor Car Co., *supra*, 135 F.Supp. at 11.

6. Semke v. Enid Automobile Dealers Association, *supra*, 456 F.2d 1361.

7. One treatise writer explained:
"Unless the trebling provision is clearly explained to the jury, basic misunderstanding may arise which would result in totally erroneous verdicts and judgments. For example, the jury might accept treble the amount of damages with the effect that plaintiff would recover nine times the amount of the actual damages. Or the jury might divide the amount of damages by three." Timberlake, Federal Treble Damage Anti-trust Actions, § 19.06 at 281–82. (1965).

leged threats are disputed questions of fact and the Court has determined that if the Plaintiff is able *to establish threats to terminate his lease or to refuse to renew same,* unless Plaintiff used Gulf accessories and ceased to use accessories of other companies and ceased charging a higher price than the price Gulf wanted retailers to charge, such conduct would constitute anti-trust violations and Plaintiff can recover the damages, if any, he may establish commencing January, 1971—the day he states the threats commenced—until March, 1972, when he disposed of the station." (Emphasis added).

Next the district court discussed the issue on appeal:

"The Court is convinced that had Plaintiff waited and had Defendant refused to renew the lease, proof of threats to do so would constitute anti-trust violations and he could have recovered future damages. However, the Plaintiff voluntarily disposed of his equipment and the lease and Defendant never refused to renew it. The mere threat of a refusal to renew the lease does not constitute sufficient grounds for the Plaintiff to dispose of his property and lease and them seek damages. Had Defendant refused to renew the lease, then all of the alleged threats would have been admissible to establish that Defendant refused to renew because Plaintiff used other accessories, charged higher prices for gasoline, etc., which would constitute anti-trust violations. . . . Plaintiff's conduct was premature if Defendant intended to refuse to renew his lease so far as future profits are concerned."

■ If the threats to terminate appellant's lease can constitute a violation of the anti-trust law for purposes of granting damages for part of the period of occupancy, January, 1971 until March, 1972, then we do not understand why such threats would not constitute a violation of the anti-trust law if they were instrumental in forcing appellant to sell his service station.[8] The anti-trust law does not require a plaintiff to retain possession of a business oppressed by anti-trust violation until the business is bankrupted or directly shut down by the violator.[9] Lehrman v. Gulf Oil Corp., *supra,* 464 F.2d at 45.

■ We certainly agree with the district court that appellant may have *voluntarily* disposed of his dealership by sale to his brother, and that there may have been no substantial threats of non-renewal or that the threats did not cause the sale. But this is in dispute, resulting in a genuine issue of material fact regarding Gulf's liability on this issue, as to whether there were threats and if so, if they caused a forced sale.

The defendant-appellee argues that even if there is a factual dispute on the existence of an anti-trust violation, the partial summary judgment can be affirmed because there were no damages caused by the threats to fail to renew the lease. In essence, appellee contends that the appellant testified in his deposition that he received a fair market value for his service station, therefore, incurring no loss of future profits, good will, or value on his equipment.

■ We agree with the fundamental point that a plaintiff cannot recover in an anti-trust suit both the difference between the fair market value and the price received at the time of the sale, and the loss of future profits. Albrecht v. Herald Co., 452 F.2d 124 (8th Cir. 1971), mandamus denied, 405 U.S. 1063, 92 S.Ct. 1493, 31 L.Ed.2d 810 (1972);

8. *See* Lehrman v. Gulf Oil Corp., 464 F.2d 26, 44–47 (5th Cir.), cert. denied, 409 U.S. 1077, 93 S.Ct. 687, 34 L.Ed.2d 665 (1972); Simpson v. Union Oil Co. of California, 411 F.2d 897, 908–910 (9th Cir.), rev'd. on other grounds, 396 U.S. 13, 90 S.Ct. 30, 24 L.Ed. 2d 13 (1969); Lessig v. Tidewater, 327 F.2d 459 (9th Cir.), cert. denied, 377 U.S. 993, 84 S.Ct. 1920, 12 L.Ed.2d 1046 (1964); Osborn v. Sinclair Refining Co., 324 F.2d 566, 572–573, n. 9 (4th Cir. 1963).

9. In the instant case, the plaintiff should not be penalized in his recovery of damages, if he can show liability, because he took action, the sale of his service station, which tended to mitigate his damages.

Treble Damages, 80 Harv.L.Rev. at 1566, 1577–86 (1967). In *Albrecht*, the plaintiff was forced to sell his paper route at less than fair market value because of the defendant's anti-trust violations. The damage award fell into three categories and was similar to the request in this case:

"(1) Plaintiff's damage prior to sale, consisting of profits lost in the operation of the business by reason of Globe-Democrat's competition;

"(2) The difference between the fair market value of plaintiff's business (with all of his customers intact) at the time of the sale and the actual sale price received; and,

"(3) Loss of future profits following the forced sale."

Albrecht v. Herald Co., *supra*, 452 F. 2d 126.

The court there thoroughly reviewed the precedents and held item three inapplicable as unjustly allowing double recovery. The court reasoned:

"It is our opinion that the plaintiff has received all permissible damages under items one and two, damages occasioned prior to the sale and the full market value on the sale of his route as a going concern, free of the restrictive practices. This value is figured on the basis of his reconstituted route with all 1200 customers. Fair market value would be that price a willing seller could secure from a willing buyer, and the evidence establishes $24,000 as the maximum price attainable . . . The prospect of future earnings is considered in arriving at the fair market value of a given business. Here, undoubtedly the value of the route rested not in its tangible assets of an old truck and paper wrapper (valued $600), but in the exclusive contract for distribution of a well regarded newspaper in a given area. Whatever that fair market value might be, plaintiff has received it. Capitalizing and discounting future profits is one method of figuring present value, but this does not mean that a person is entitled to present value plus future profits." *Id.* at 131.

Similarly in the instant case, if there had been no disputed fact concerning whether appellant received the fair market value for his service station, then the partial summary judgment would have been properly granted. The record and briefs reflect, however, that there is grave doubt whether appellant knowingly admitted receiving a fair market value. For instance, the testimony in appellant's deposition indicates that he did not know what "good will" was, so that it is improbable that any admission of receipt of a fair market value took into consideration value for good will.[10]

---

10. The dialogue in appellant's deposition states:

"Q. So you decided then to get out?
A. Correct.
Q. And you made a deal with your brother?
A. Right.
Q. Did your brother buy all your stock and equipment from you?
A. Yes, sir.
Q. Did he pay you a fair price for it?
A. Yes, sir.
Q. You don't have any complaint about the price you got for your stock and equipment?
A. No, sir.
Q. You realized full value for your stock and equipment?
A. Yes, sir, by selling it.
Q. By selling it?
A. Yes, sir.
Q. You didn't lose any money by selling your stock and equipment to your brother?
A. No, sir.
Q. Gulf didn't have anything to do with it, you all made the trade by yourself?
A. No, we didn't make a trade, I offered it to him at a certain price, and he accepted it, and we—
Q. Well, you made a trade, you said, 'all right, I'll sell it at this price,' and he said, 'O.K., I'll buy it from you.'?
A. Correct.
Q. Whatever the price was, you were both satisfied?
A. Right.
Q. Did you have any good will connected with the station?
A. What do you mean by good will?
Q. I don't know, whatever good will is, do you know what good will is?

Therefore on both the issue of liability and damages,[11] there are disputed issues of material fact which make summary judgment improper.

■ Concerning the third issue, we find that appeal does not properly lie under 28 U.S.C.A. § 1292(b).[12] The order appealed from is a pre-trial ruling excluding evidence admitted in the case of Lehrman v. Gulf Oil Corp., *supra*, 464 F.2d 26, which involved a similar antitrust action against Gulf. This issue is not one that constitutes a controlling question of law or one that can possibly advance the ultimate termination of the litigation. Control Data Corp. v. International Business Machine Corp., 421 F. 2d 323 (8th Cir. 1970); 9 Moore's Federal Practice ¶ 110.22 [2] (2nd Ed. 1973). As the court explained in *Control Data,* where a similar pre-trial ruling excluding evidence was denied appeal:

"... When such issues become 'ripe,' the district court trying the case will have the benefit of all factual proof governing the question of relevancy. If an offer of proof is made, the trial court will have the benefit of the complainant's specific theory as to the use of the evidence and will likewise be able to evaluate the admissibility question on the basis of specific objection made. In this context a trial court will be able to make a ruling and this court will be able to pass upon the merits of a litigated question. Our ruling is in no

way intended to undermine the salutary value of the consolidated pre-trial order. . . . However, if in any trial certain evidence precluded by pre-trial order becomes relevant by reason of development of proof at trial, it could be reversible error to blindly adhere to the prior order. In this sense we feel questions relating to admissibility of evidence must always and ultimately relate to the trial court's actual ruling in view of the record there existing." 421 F.2d at 327.

This reasoning was also echoed by Moore in his treatise:

"It is necessary, however, that the order involve a clear-cut question of law against a background of determined and immutable facts. For that reason such matters as the sufficiency of pleadings and *pre-trial rulings as to the admissibility of evidence* are not ordinarily certifiable [under section 1292(b)]. Nor are matters that are entrusted to the discretion of the district court if all that is involved is the manner in which the discretion is exercised." (Emphasis added). 9 Moore's Federal Practice ¶ 110.22[2] at 261.

The appeal on this issue is dismissed.

The decision of the district court in Pollock & Riley, Inc. v. Pearl Brewing Company, is affirmed; the decision in Wood v. Gulf Oil Corporation, is reversed in part and the appeal is dismissed in part.

---

A. Well, good will consists of—anything you want it to consist of, I guess.
Q. Well, did you have any connected with the station?
A. No, sir, I sold the station for exactly what I give for it, so I don't guess there was any good will.
Q. All right, sir, so you sold it for what you thought was a fair value?
A. Right."

11. Of course in determining the fair market value, whether by capitalizing and discounting future profits or estimating loss of good will and the value of the service station equipment, the $10,000 received will necessarily have to be set off.

12. This provision states:

"When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however*, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order."