<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit

No. 98-1318

                      NORA CAMPOS-ORREGO,

                      Plaintiff, Appellee,

                               v.

                      ALBA RIVERA, ET AL.,

                    Defendants, Appellants.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Carmen Consuelo Cerezo, U.S. District Judge]

                             Before

                     Selya, Circuit Judge,
                                
            Coffin and Cyr, Senior Circuit Judges.
                                
                                
                                
                                
    Sylvia Roger Stefani, Assistant Solicitor General, Puerto Rico
Dep't of Justice, with whom Carlos Lugo Fiol, Solicitor General,
and Edda Serrano Blasini, Deputy Solicitor General, were on brief,
for appellants.
    Judith Berkan, with whom Mary Jo Mendez-Vilella was on brief,
for appellee.

May 4, 1999

 SELYA, Circuit Judge.  This appeal requires us, inter
alia, to address an important question as to the circumstances in
which an award of punitive damages for a constitutional tort may
endure without a corresponding award of compensatory damages.
 The underlying litigation had its genesis in the
employment of plaintiff-appellee Nora Campos-Orrego (Campos) with
the Puerto Rico Comision para los Asuntos de la Mujer (Women's
Rights Commission or Commission). Campos claims that defendants-
appellants Alba Rivera, Olga Birriel Cardona, and Enid Gavilan
Perez, her superiors at the Commission, retaliated against her for
attempting to assist a victim of sexual harassment.  A jury
determined that Campos's claim had merit and awarded her damages.  
The appellants solicit our intervention, but their lackadaisical
approach to appellate advocacy proves once again that "courts   
like the Deity   are more prone to help those who help themselves."  
Williams v. Drake, 146 F.3d 44, 50 (1st Cir. 1998).  The short of
it is that the appellants have squandered most of their assigned
errors through defaults of various kinds.  Hence, we limit our
substantive review to the few remaining grounds (one of which
involves the punitive damages issue mentioned above).
 In the ordinary case, we would begin by limning the
relevant factual background.  Here, however, for reasons that will
soon become apparent, we submit only a thumbnail sketch, drawn
primarily from Campos's complaint.
 Campos worked for the Women's Rights Commission for
several years, principally as a staff attorney.  In that capacity,
she often counseled victims of gender-based discrimination.  One
such individual, whom we shall call Client A, met with Campos in
1991 and related a tale of sexual harassment at the hands of the
Mayor of Bayamon, a high-level figure in the New Progressive Party
(the political party to which the appellants all belong).  Campos
counseled Client A and explained her legal options, but Client A
chose not to pursue her rights at that time.
 In August 1994, after a brief interval during which she
worked elsewhere, Campos was rehired by the Women's Rights
Commission as a quondam consultant under a one-year contract.  In
this post, she not only functioned as a staff attorney, but also
analyzed sexual harassment in Puerto Rico's public institutions.  
In November of 1994, Client A returned to the Commission's offices
and requested a copy of her file.  Campos supplied it.  Client A
proceeded to lodge a sexual harassment complaint against the Mayor
on or about June 1, 1995.
 The media pounced on Client A's story like a pride of
hungry lions on a side of beef.  Extensive coverage began as early
as June 2.  The three appellants summoned Campos to a meeting that
very day and interrogated her as to why she had given Client A a
copy of the file.  According to Campos, the appellants intimated
that the matter should have been treated with greater discretion
because it involved the Mayor.  On June 3, two of the appellants
discussed the incident on a popular radio show and implied that an
unnamed employee (who could not have been anyone but Campos) was
incompetent, or insubordinate, or both.  By letter dated June 6,
Rivera (the Commission's executive director) terminated Campos's
employment effective June 30   and did so notwithstanding that,
roughly a week before the story broke, Campos had accepted Rivera's
offer to renew her contract for another year, commencing July 1,
1995.  The next day, El Da, a major Spanish-language newspaper,
published an article in which Rivera attributed the Commission's
lack of action on Client A's complaint to Campos.  The newspaper
also reported that Campos would be terminated.  Campos claims that
the appellants posted the story in public view in the Commission's
offices.
 Campos brought suit against the three appellants in
Puerto Rico's federal district court, claiming that they had
cashiered her because she appropriately aided Client A, rather than
discouraging or attempting to derail Client A's embryonic sexual
harassment complaint against a political heavyweight.  Campos
argued that her termination violated P.R. Laws Ann. tit. 29,  155h
(1995) (Law 17), which safeguards individuals against retaliation
for affording assistance to persons who seek to mount sexual
harassment claims.  She likewise argued that the manner in which
Rivera fired her abridged her right to procedural due process.
 The appellants denied Campos's allegations and the matter
was tried to a jury over a period of 12 days.  The docket indicates
that, at the close of Campos's case in chief and again at the close
of all the evidence, the appellants moved for judgment as a matter
of law.  See Fed. R. Civ. P. 50.  In respect to the two causes of
action with which we are concerned, they claim to have asserted
that Campos lacked standing to charge retaliation under Law 17 and
that she had no property interest sufficient to support her
procedural due process claim.  In any event, the district court
denied the appellants' motions on both occasions.  Insofar as is
material here, the jury returned a general verdict in Campos's
favor, awarding her $80,000 in compensatory damages against the
appellants, jointly and severally, on the Law 17 count and $10,000
in punitive damages against Rivera on the due process count.
 Campos promptly moved for the entry of a judgment
embodying the jury's award but augmenting it by (1) doubling the
compensatory damages on the Law 17 claim, (2) ordering
reinstatement, and (3) deducting $1 from the punitive damage award
and reallocating it as nominal damages on the due process claim
(or, in the alternative, merely reaffirming the punitive damage
award).  The appellants opposed this motion.  They contended that
Campos was not entitled to statutory doubling because the jury had
not been instructed on this potentiality, that reinstatement should
be denied (or, at least, not ordered without an evidentiary
hearing), and that the punitive damage award should be vacated due
to the lack of any supporting compensatory damages.  In respect to
the Law 17 claim, the district court doubled the compensatory
damages (to $160,000), eschewed an evidentiary hearing, and ordered
Campos's reinstatement.  In respect to the due process claim, the
court recast $1 from the punitive damage award as nominal damages,
thus keeping the aggregate amount intact but reducing punitives to
$9,999.  The appellants then renewed their motion for judgment as
a matter of law, but to no avail.  This appeal followed.
 It is the nature of the adjudicative process that
appellate courts apply discerned principles of law to facts
established in a trial court or an administrative tribunal.  
Parties seeking appellate review must furnish the court with the
raw materials necessary to the due performance of the appellate
task.  See Moore v. Murphy, 47 F.3d 8, 10 (1st Cir. 1995).  
Applicable procedural rules recognize this division of labor and
place the burden squarely on the appealing party to supply so much
of the record of the proceedings below as is necessary to enable
the appellate court to conduct informed review.  See Fed. R. App.
P. 10(b); see also Jardines Bacata, Ltd. v. Diaz-Marquez, 878 F.2d
1555, 1559 n.5 (1st Cir. 1989); Real v. Hogan, 828 F.2d 58, 60 (1st
Cir. 1987).  When an appellant shirks this responsibility, the law
exacts a condign penalty:
   Should an appellant spurn this duty and drape
 an incomplete record around the court's neck,
 the court in its discretion either may
 scrutinize the merits of the case insofar as
 the record permits, or may dismiss the appeal
 if the absence of a full transcript thwarts
 intelligent review.

Moore, 47 F.3d at 10.
 These principles pertain here.  The appellants, who now
strive to advance a myriad of factbound arguments, chose to proceed
in this forum armed only with a transcript of the district judge's
charge to the jury.  They did not secure a transcript of any other
portion(s) of the protracted proceedings below.  This omission
disables us from affording reasoned consideration to most of the
issues that the appellants seek to raise.  We offer two
illustrations of why these arguments are forfeit.
 The most obvious example pertains to the appellants'
sufficiency-of-the-evidence argument.  They calumnize the district
court's denial of their motions for judgment as a matter of law on
the basis that "[t]here was absolutely no evidence to support a
claim under Law 17 that [their] conduct was gender-based."  
Appellants' Brief at 10.  In essence, their argument is that Campos
was fired for her lack of loyalty to her superiors, not because of
her gender or for facilitating the filing of a sexual harassment
claim against a political icon.  Appellate judges are not mind
readers, and it is impossible for us to evaluate this contention
without recourse to an accurate record of the evidence presented at
trial.  By failing to furnish a trial transcript, the appellants
defaulted the point.
 Another example of how the appellants' failure to furnish
a transcript negatively impacts the instant appeal relates to
Rivera's challenge to the jury's determination that she was liable
for a due process violation.  For Campos's job to be protected by
the procedural safeguards of the Due Process Clause, she must have
had "a legitimate claim of entitlement to it."  Board of Regents v.
Roth, 408 U.S. 564, 577 (1972).  Rivera asserts that Campos was
hired for a fixed period; that her contractual term simply was
allowed to expire; and that, therefore, she could show no such
constitutionally protected property interest.  But this issue, too,
is fact-dependent.  Campos retorts that she adduced evidence of a
contract extension; and that, in all events, she crossed the
constitutional threshold by introducing probative evidence that
Rivera violated her constitutionally protected liberty interest by
handling her termination in a public (and egregiously stigmatizing)
fashion.  See, e.g., Paul v. Davis, 424 U.S. 693, 701 (1976)
(explaining that reputational damage incident to discharge under
some circumstances may invade a constitutionally protected liberty
interest); Roth, 408 U.S. at 573 (noting that a state could refuse
reemployment in such a stigmatizing fashion as to implicate an
employee's constitutionally protected liberty interest).  Because
there is no feasible way for us to gauge these competing versions
of events without a trial transcript, Rivera, qua appellant,
necessarily loses by default.
 We think that these two examples suffice, and that no
useful purpose would be served by itemizing the other components of
the appellants' asseverational array that have been rendered
nugatory by their failure to furnish a suitable record.  Withal,
the appellants do assert some claims of error that might be
susceptible to consideration without recourse to a transcript, and
it is to those claims that we now turn.
 The first such claim poses an intriguing question:  
Whether Law 17's protection against retaliatory action by an
employer due to an employee's participation in the lodging or
investigation of a sexual harassment complaint extends to
retaliation by an employer other than the harassment victim's
employer?  On one hand, Law 17's reference to an "employer"
conceivably could be limited to a common employer of both the
victim of the harassment and the victim of the retaliation   in
which event Campos (who did not work for the Mayor or for the
municipality) would have no cause of action.  On the other hand,
the inexplicit statutory language, coupled with the remedial spirit
animating Law 17, might well support an interpretation that would
allow an action against any employer engaging in such retaliatory
acts, whether or not that employer also had employed the harassment
victim.  Insofar as we can tell, the Puerto Rico courts have not
resolved this conundrum.
 Regardless of the interesting nature of the question, we
must refrain from answering it.  This issue has been forfeited
because the appellants failed to raise it squarely in the trial
court.  (At least, this is how it appears from the incomplete
record available to us.)  We have reiterated, with a regularity
bordering on the echolalic, that a party's failure to advance an
issue in the nisi prius court ordinarily bars consideration of that
issue on appellate review.  See, e.g, LaChapelle v. Berkshire Life
Ins. Co., 142 F.3d 507, 510 (1st Cir. 1998); Teamsters, Chauffeurs,
Warehousemen and Helpers Union v. Superline Transp. Co., 953 F.2d
17, 21 (1st Cir. 1992); McCoy v. Massachusetts Inst. of Tech., 950
F.2d 13, 22 (1st Cir. 1991).  Although we have permitted an
occasional exception to this rule in extraordinary circumstances,
see, e.g., National Ass'n of Soc. Workers v. Harwood, 69 F.3d 622,
627-29 (1st Cir. 1995), the case at hand fits comfortably within
the sweep of the general rule, not within the long-odds exception
to it.  Consequently, we treat the statutory construction issue as
waived, and take no view of its ultimate resolution.
 A second issue falls by the wayside for much the same
reason.  The appellants contend on appeal that the only proper
defendant in a retaliation case under Law 17 is the plaintiff's
actual employer (here, the Commission), not individual managers.  
But, no written motion in the record advances this theory of
defense, and Campos denies that the appellants argued the point
below.  Since the appellants neglected to produce a transcript, we
must treat this argument, too, as by the boards.  Hence, we will
not address it, except to say that plain-error review is not in
order, for the error   if there is one   is not obvious, and no
patent injustice appears in holding the appellants to the readily
foreseeable consequences of their own trial tactics.
 These multiple defaults do not entirely close the door on
this appeal, but they narrow the aperture considerably.  In the
last analysis, they leave two preserved assignments of error
susceptible to meaningful review on the meager record furnished to
us.
 The first contests the trial judge's authority to double
the jury's compensatory damage award without having instructed the
jury that such doubling would occur.  In the appellants' view, this
course of action usurped the jury's responsibility for determining
damages and thereby violated the Seventh Amendment.  This
contention presents a pure question of law, and, accordingly, our
review is plenary.  See In re Cusumano, 162 F.3d 708, 713 (1st Cir.
1998); In re Howard, 996 F.2d 1320, 1327 (1st Cir. 1993).
 It is common ground that judges must respect the
boundaries of a jury's province, and that judicial trespass may
violate a litigant's Seventh Amendment rights.  See Dimick v.
Schiedt, 293 U.S. 474, 486-87 (1935).  No such trespass occurred
here.  The appellants' argument to the contrary conflates two
related, but not congruent, concepts:  damages and judgment.  In a
civil jury trial, the jury customarily must determine the damages
that the plaintiff has sustained.  See id. at 485-86.  It is the
responsibility of the court, however, to enter judgment.
 This case aptly illustrates the dichotomy.  Law 17
decrees that violators "incur civil liability . . . for a sum equal
to double the amount of the damages that the action has caused the
employee or job applicant . . . ."  P.R. Laws Ann. tit. 29,  155j.  
When a jury trial has been demanded and the case is tried in a
federal court, such a scheme charges the jury with calculating the
amount of damages sustained by the victim as a matter of fact.  See
Pollock & Riley, Inc. v. Pearl Brewing Co., 498 F.2d 1240, 1243
(5th Cir. 1974) (considering a parallel issue under federal
antitrust statutes).  Once the jury has completed its task, the
court then must follow the statutory edict and ensure that the
judgment awards the prevailing party twice the sum calculated by
the jury.  See id.  Viewed in this light, the court below followed
the requirements of the law precisely and flouted no constitutional
commands.
 The appellants further assert that, at the very least,
the judge should have told the jury that Law 17 provided for the
subsequent doubling of any compensatory damage award.  This
assertion is fatally flawed.  For one thing, the scant record that
the appellants have supplied does not indicate that they either
requested such an instruction or objected in a timeous fashion to
its omission.  They have, therefore, forfeited the right to
complain.  See Elliot v. S.D. Warren Co., 134 F.3d 1, 5-6 (1st Cir.
1998); see also Fed. R. Civ. P. 51.
 For another thing, in situations in which multiple damage
awards are statutorily provided, "it is generally not advisable to
inform a jury of the [multiple damage] provisions . . . because of
the danger that a jury may reduce a plaintiff's award to account
for [the multiplication]."  CVD, Inc. v. Raytheon Co., 769 F.2d
842, 860 (1st Cir. 1985).  Indeed, some courts take the position
that it constitutes reversible error to give an instruction that
informs a jury of the potential for multiplication of damages.  
See, e.g., HBE Leasing Corp. v. Frank, 22 F.3d 41, 45-46 (2d Cir.
1994); Arnott v. American Oil Co., 609 F.2d 873, 889 n.15 (8th Cir.
1979); Pollock & Riley, 498 F.2d at 1242-43.  We need not decide
that question today.  Suffice to say that, at the very least, it is
within a trial judge's discretion not to inform a civil jury that
the judge ultimately will apply a multiplier to any compensatory
award.  Cf. Evans v. Avery, 100 F.3d 1033, 1040 (1st Cir. 1996)
(explaining that district courts enjoy "wide discretion . . . to
fashion jury instructions as they see fit," and confirming that a
trial court has discretion either to inform the jury of a statutory
cap on damages or to withhold such information).
 The appellants' second preserved point concerns the
district court's modification of the damage award on the due
process claim.  The affected appellant, Rivera, argues that a
verdict for compensatory damages is a sine qua non to a verdict for
punitive damages; that the lower court therefore should have
vacated the punitive damage award on the due process count; and
that, by shifting $1 from punitive damages to nominal damages and
leaving the remainder of the punitive award in place, the court
exceeded its authority.  Rivera's challenge implicates both the
sufficiency vel non of stand-alone punitive damage awards and the
power of the district court to award nominal damages for a
constitutional violation.  Thus, her challenge presents questions
of law, subject to plenary review.
 Rivera's argument proceeds from two propositions with
which we are in general agreement.  First, the Seventh Amendment
flatly prohibits federal courts from augmenting jury verdicts by
additur.  See Dimick, 293 U.S. at 486-87.  Second, most punitive
damage awards are insupportable if not undergirded by a predicate
award of either compensatory or nominal damages.  See Kerr-Selgas
v. American Airlines, Inc., 69 F.3d 1205, 1214 (1st Cir. 1995).  
The question reduces to whether these propositions apply to, and
require reversal or vacatur in, this case.
 Though couched in terms of familiar principles, Rivera's
objection actually rests on a fundamental misapprehension.  While
it is true that in a typical state-law tort case punitive damages
unaccompanied by either compensatory or nominal damages cannot
stand, see, e.g., Cooper Distrib. Co. v. Amana Refrig'n, Inc., 63
F.3d 262, 281-83 (3d Cir. 1995) (applying New Jersey law);
Restatement (Second) of Torts  908 cmts. b, c (1979), a section
1983 case premised on a constitutional violation evokes a different
set of considerations.  Several respected courts have ruled
persuasively that, as a matter of federal law, a punitive damage
award which responds to a finding of a constitutional breach may
endure even though unaccompanied by an award of compensatory
damages.  See, e.g., King v. Macri, 993 F.2d 294, 297-98 (2d Cir.
1993); Erwin v. County of Manitowoc, 872 F.2d 1292, 1299 (7th Cir.
1988).  The Third Circuit explained the rationale for such a rule
over forty years ago:
   [I]f it be once conceded that [punitive]
 damages may be assessed against the wrongdoer,
 and, when assessed, may be taken by the
 plaintiff,   and such is the settled law of
 the federal courts,   there is neither sense
 nor reason in the proposition that such
 additional damages may be recovered by a
 plaintiff who is able to show that he has lost
 $10, and may not be recovered by some other
 plaintiff who has sustained, it may be, far
 greater injury, but is unable to prove that he
 is poorer in the pocket by the wrongdoing of
 defendant.

Basista v. Weir, 340 F.2d 74, 87-88 (3d Cir. 1965) (citations and
internal quotation marks omitted).  Should this circuit follow this
line of authority   a matter on which we need not opine today,
given the peculiar procedural posture in which the issue arises,
see infra   it would override contentions like Rivera's.
 Here, however, there is a rub.  The district court
specifically instructed the jury that punitive damages "may be
allowed only if you should first award the plaintiff Campos a
verdict for actual or compensatory damages on the [procedural due
process] cause of action."  Neither party objected to this
instruction, and, thus, it became the law of the case.  See Milone
v. Moceri Family, Inc., 847 F.2d 35, 38-39 (1st Cir. 1988).  
Although the law of the case doctrine is not totally rigid, see
United States v. Rivera-Martinez, 931 F.2d 148, 150-51 (1st Cir.
1991) (explaining that the doctrine encompasses a "modicum of
residual flexibility"), we nonetheless are reluctant to depart
cavalierly from it.
 In this instance, we need not decide whether Campos has
lost the benefit of favorable legal authority by failing to object
to the judge's charge.  This is so because, even if the law of the
case took hold, the jury's verdict on the due process count would
not have been void, but only internally inconsistent   and, thus,
repairable.  Parties confronted by an internally inconsistent jury
verdict have an obligation to call the inconsistency to the trial
judge's attention.  See, e.g., Toucet v. Maritime Overseas Corp.,
991 F.2d 5, 8 (1st Cir. 1993); Austin v. Lincoln Equip. Assocs.,
Inc., 888 F.2d 934, 939 (1st Cir. 1989).  The appellants concede
that they neither pointed out the inconsistency nor asked that the
jury be reinstructed.  For her part, Campos says that "[p]rior to
the close of the session [at which the jury returned its verdict],"
she signaled the inconsistency by announcing that she would ask the
court for nominal damages (to be deducted from the punitive damage
award).  Appellee's Brief at 7.  Rivera neither challenges this
assertion nor claims that she requested that the jury retire to
deliberate on the nominal damage request.  We think that Rivera's
silence at this critical juncture amounted to a waiver of any right
to trial by jury on the issue of nominal damages (which had not
been covered in the original jury instructions), and she cannot now
be heard to complain that this issue was left to the judge.  Cf.
Anderson v. Cryovac, Inc., 862 F.2d 910, 917-18 (1st Cir. 1988)
(holding that when a party acquiesces in the omission of a factual
issue from special interrogatories to the jury, the trial judge's
post-verdict resolution of the omitted issue does not transgress
the Seventh Amendment).
 From that point forward, the pieces fall easily into
place.  The district court gave Campos $1 in nominal damages at a
later date, subtracting that sum from the $10,000 punitive damage
award.  One can hardly quarrel with this improvisation.  Over two
decades ago, the Supreme Court held that nominal damages are
recoverable on a finding of a procedural due process violation,
even without a corollary finding of injury or an award of
compensatory damages.  See Carey v. Piphus, 435 U.S. 247, 266-67
(1978).  The Carey Court reasoned that
   [b]ecause the right to procedural due process
 is 'absolute' in the sense that it does not
 depend upon the merits of a claimant's
 substantive assertions, and because of the
 importance to organized society that
 procedural due process be observed, we believe
 that the denial of procedural due process
 should be actionable for nominal damages
 without proof of actual injury.

Id. at 266 (citations omitted).

 Extrapolating from Carey, other courts of appeals have
held that when a jury finds a violation of an "absolute"
constitutional right yet declines to award compensatory damages,
the district court ordinarily should award nominal damages.  See,
e.g., Cabrera v. Jakabovitz, 24 F.3d 372, 391 (2d Cir. 1994);
Ruggiero v. Krzeminski, 928 F.2d 558, 563-64 (2d Cir. 1991); Farrar
v. Cain, 756 F.2d 1148, 1152 (5th Cir. 1985).  We agree with these
courts and deem Carey controlling here.  Accordingly, we hold that
when a jury in a case brought pursuant to 42 U.S.C.  1983 finds a
violation of the plaintiff's procedural due process rights, but
fails to award compensatory damages, nominal damages are available
to the plaintiff.
 Let us be perfectly clear.  We do not suggest that this
entitlement is automatic, but, rather, it is incumbent upon the
plaintiff to make a timely request for nominal damages.  Cf. Kerr-
Selgas, 69 F.3d at 1214-15 (emphasizing, in regard to a claim under
42 U.S.C.  1981a, that a plaintiff is not "automatically entitled"
to nominal damages, and suggesting the need for "a timely
request"); Cooper, 63 F.3d at 281-83 (holding to like effect in a
tort case).
 In some circuits, a plaintiff must request nominal
damages ex ante, that is, by seeking a jury instruction to that
effect, on penalty of waiver.  See, e.g., Cooper, 63 F.3d at 281-
84; Sims v. Mulcahy, 902 F.2d 524, 533-36 (7th Cir. 1990).  In
dictum, Kerr-Selgas adumbrates a more expansive approach.  See
Kerr-Selgas, 69 F.3d at 1215 (denying relief because "Kerr neither
requested a jury instruction on nominal damages, nor asked the
district court for [nominal damages]" after the verdict had been
returned), and we think that the interests of justice warrant such
expansiveness.  Accordingly, we hold that a timely request for
nominal damages can be made either ex ante (to the jury) or ex post
(to the judge).  Thus, a plaintiff may request the judge to
instruct the jury on nominal damages, or in the absence of such an
instruction, may ask the trial court for nominal damages on the
occasion of, or immediately after, the return of the verdict.  In
this instance, the jury was not charged on nominal damages, but
Campos made a sufficiently prompt post-verdict request.  We
therefore affirm the award of nominal damages.
 That ends the matter.  The award of nominal damages
bridges any gap attributable to the absence of a compensatory
damage award.  See id. at 1214.  Rivera's objection to the judgment
is, therefore, bootless.
IV.  CONCLUSION
 We need go no further.  On this exiguous, waiver-riddled
record, only a smattering of issues are amenable to review.  
Limiting our substantive consideration to those few issues, we
discern no reversible error.  Accordingly, the judgment below will
be

Affirmed.  Costs to appellee.

</body>

</html>