**Andre BROOKS, Plaintiff–Appellant,**

**v.**

**Charlotte COOK; Mark L. Mechanic; County of Los Angeles, Defendants–Appellees.**

**Nos. 89–56077, 89–56109.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 8, 1991.

Decided July 22, 1991.

---

Stephen Yagman, Marion R. Yagman, Yagman & Yagman, P.C., Venice, Cal., and Howard R. Price, Christina Hill, Brodey & Price, Beverly Hills, Cal., for plaintiff-appellant.

Eric S. Oto, Keith A. Fink, Jeffrey W. Giordano, Anthony P. Serritella, Cotkin, Collins & Franscell, Los Angeles, Cal., for defendants-appellees.

Before BOOCHEVER, HALL and RYMER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Circuit Judge:

Andre Brooks appeals a jury verdict in favor of the defendants on his 42 U.S.C. § 1983 claim. Brooks asserts that he was prejudiced by several erroneous jury instructions. He also appeals an award of attorneys' fees, pursuant to 42 U.S.C. § 1988, to the prevailing defendants. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we reverse.

I

On January 14, 1985, Los Angeles County Sheriff Deputies Charlotte Cook and Mark Mechanic stopped a car driven by Brooks's brother, in which Brooks was a passenger. The deputies testified that they stopped the car because it was speeding and driving erratically. As they approached the car, the deputies observed the driver bending forward out of their view. They ordered the occupants out of the car. Brooks's brother immediately exited, was patted down and was given a field sobriety check. Brooks initially refused to leave the car, but finally exited after being yelled at by the officers. He continued, however, to be uncooperative as the deputies checked him for weapons and searched the car's passenger compartment. After approximately ten minutes, Brooks and his brother were released.

Brooks told a different version of these events. According to him, the car was being driven in a proper manner within the speed limit. At no time did his brother lean forward. When ordered to exit the car, Brooks merely asked the deputies what they had done wrong. The deputies only response was to repeat their command in a stronger tone, and both Brooks and his brother got out. At that point deputy Cook pushed Brooks against the car, injuring his shoulder. After the deputies searched Brooks, his brother and the car, they an-

nounced that the car had been speeding and allowed them to go. According to Brooks, the incident lasted ten to fifteen minutes.

Brooks brought suit for alleged violation of his constitutional rights pursuant to 42 U.S.C. § 1983. At the close of plaintiff's case-in-chief, the district court granted a directed verdict for the defendants. Brooks appealed. We reversed in an unpublished disposition, holding that the question of whether the stop was appropriate was an issue of witness credibility that belonged to the jury.

When the case was retried in August 1989, the jury returned a verdict for the defendants. Following the entry of judgment, the district court partially granted defendants' motion for attorneys' fees, pursuant to 42 U.S.C. § 1988, and awarded defendants $8,228. Brooks timely appealed.

## II

Brooks first argues that the jury verdict was impermissibly tainted because the jury was told both by defense counsel in his summation and the judge in the jury instructions that Brooks would be eligible for attorneys' fees if he prevailed.

■ Jury instructions should be reviewed "as a whole, in the context of the entire trial, to determine whether they were misleading or inadequate to guide the jury's deliberations." *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1287 (9th Cir.1986). We reverse only for an abuse of discretion, giving the trial judge "substantial latitude in tailoring the instructions so long as they fairly and adequately cover the issues presented." *United States v. Benny*, 786 F.2d 1410, 1416 (9th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 668, 93 L.Ed.2d 720 (1986).

In his complaint, Brooks sought $1 million in general and $1 million in punitive damages. At trial, however, his attorney asserted that Brooks's principal purpose was to vindicate his constitutional rights and that he would accept a nominal verdict of one dollar. The district court judge apparently believed that Brooks, anticipating that he would not otherwise prevail, was attempting to obtain a nominal award so that he would be eligible for attorneys' fees.[1]

The judge responded by allowing the defense to comment on Brooks's motives. In his summation, the defense attorney did so, calling Brooks's request for nominal damages a "deception" and a "bill of goods."[2] In addition, the judge noted that Brooks was asking for a nominal verdict,[3] then told the jury,

> But the true deception is this: The plaintiff, if you give him one dollar, his attorney is entitled to get his fee from my client.
>
> * * * * * *
>
> Again, ladies and gentlemen, a bill of goods. Don't be deceived. If you give a dollar to the plaintiff because you feel as though his rights were violated, so be it. But understand, that doesn't mean my clients only pay a dollar. And all I ask is that you know that, so that you don't go back in the jury room and compromise.
>
> And say, Well, let's try to give everybody what they want. We'll give the plaintiff a dollar, we'll say that his rights, you know, were violated, and it really won't be that much of a burden on the defendants in the case because it's only a buck. That's not true.
>
> The Judge will instruct you. You award nominal damages, and my clients might have to also pay attorneys' fees. So as long as we understand that, that's all I ask.

---

**1.** In conference the judge stated to Brooks's attorney,

> Well, what you're asking me to do then is to let you, uh, pull a sneaker on the Jury, and get away with it. What you're asking me to do is—is to let you say very nobly to this Jury, Give my man a dollar, and, uh, then the Jury will go out and they'll say, Oh, he's a man of such high principle, and so is his client, let's give him a dollar.
>
> And you know the reason why you're asking that. It's just exactly for the reason Mr. Giordano mentioned, and that is so you could then come in say I'm the prevailing party, so give me attorneys' fees.
>
> * * * * * *
>
> I'm not going to let this Jury go into that deliberation room with, uh, that—I don't want to use the word fraud, but I'll use it—pulled upon them.
>
> My job is to instruct the Jury, not to deceive them. . . .

**2.** The attorney stated in part,

**3.** The judge stated,

You are instructed that no damages in any amount should be awarded by you unless you first find from the evidence that plaintiff's constitutional rights were violated.

If you reach such a finding and award a nominal figure as damages, and thus give plaintiff a souvenir judgment, you are entitling plaintiff, as the prevailing party in this lawsuit, to ask the Court at a later stage of the proceeding to award him attorney's fees commensurate to the value of his attorney's services in this case.

After hearing the defense's summation and receiving this instruction, the jury returned a verdict for the defendants.

█ We have found no cases that discuss whether a jury may be informed of the possibility of an award of attorneys' fees. Nevertheless, we believe that the judge abused his discretion by providing the jury with this information. Both the structure and purpose of § 1988 as well as a review of analogous circumstances convince us that an error was committed.

█ The award of attorneys' fees is a matter of law for the judge, not the jury. Section 1988 states, in pertinent part, that *"the court,* in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988 (1988) (emphasis added). *See also Hensley v. Eckerhart,* 461 U.S. 424, 433–37, 103 S.Ct. 1933, 1939–41, 76 L.Ed.2d 40 (1983) (explaining the factors that *district courts* should take into account in determining reasonable fees). The jury's role is to determine liability and the amount of damages. These determinations are distinct from the awarding of fees. By informing the jury of the plaintiff's right to seek attorneys' fees under § 1988, the court invited the jury to factor in a subsequent step—the court's calculation of the ultimate judgment—that had no relevance to the jury's determination of liability and damages.

In this case, the plaintiff's attorney has argued to you that the plaintiff's principal purpose is to vindicate a denial of his constitu-

Furthermore, we believe that informing the jury of the possibility of fees could result in prejudice to the plaintiff and undermine the public policies behind § 1988. In *Ackerley Communications v. City of Salem,* 752 F.2d 1394 (9th Cir.), *cert. denied,* 472 U.S. 1028, 105 S.Ct. 3503, 87 L.Ed.2d 634 (1985), we explained that "there are public interest considerations that transcend the conferring of a financial benefit on a prevailing party." *Id.* at 1397. *See also Riverside v. Rivera,* 477 U.S. 561, 574, 106 S.Ct. 2686, 2694, 91 L.Ed.2d 466 (1986) (plurality opinion) ("[A] successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damage awards."). Allowing for the recovery of attorneys' fees helps to eliminate financial barriers to the vindication of constitutional rights. *Ackerley,* 752 F.2d at 1397; *see also* S.Rep. No. 1011, 94th Cong., 2d Sess. at 3, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5908, 5910 (purpose of § 1988 is to encourage "private attorneys general"). The award of attorneys' fees also acts to stimulate voluntary compliance with the law. *Ackerley,* 752 F.2d at 1397.

The jury, however, may be unaware of the policy considerations that drove Congress to favor the award of attorneys' fees to prevailing plaintiffs under § 1988. In a case where the plaintiff is entitled to compensatory damages, informing the jury of the plaintiff's potential right to receive attorneys' fees might lead the jury to offset the fees by reducing the damage award. Even more troubling, however, is the case where actual damages are small or nonexistent. When damages are nominal, there is a risk that the jury may believe that the "harm" does not justify the payment of a large fee award. The jury may thus decide to find for the defendant rather than allow the plaintiff's attorney to recover fees.

In analogous circumstances, we have placed limits on information provided to the jury. One such circumstance is the right of prevailing plaintiffs to receive treble tional rights, and that he would be satisfied by your giving plaintiff a nominal award of one dollar damages.

damages in antitrust cases.[4] As with § 1988, Congress has authorized the award of treble damages to deter inappropriate behavior and to encourage citizens to function as private attorneys general. *See Pollock & Riley, Inc. v. Pearl Brewing Company,* 498 F.2d 1240, 1242–43 (5th Cir. 1974), *cert. denied,* 420 U.S. 992, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975).

The majority rule is that it is error for a court to instruct a jury that it will subsequently treble any damages the jury awards.

> The purpose of treble damages is to deter violations and encourage private enforcement of the anti-trust laws. The justifiable fear of anti-trust plaintiffs is that the juries will adjust the damage award downward or find no liability, therefore thwarting Congress's purpose, because of some notions of a windfall to the plaintiff. One court has even suggested that a jury might take the revelation of the treble damage provision as an intimation from the court to restrict the amount of damages....
>
> Second, it is not for the jury to determine the amount of a *judgment.* Its function is to compute the amount of *damages.* Congress's authorization in 15 U.S.C.A. § 15 to triple the award of damages is a matter of law to be applied by the district court without interference from the jury. The fact that the awarded amount will be tripled has no relevance in determining the amount a plaintiff was injured by the anti-trust violation.

*Pollock,* 498 F.2d at 1242–43 (emphasis in original). *See also Lehrman v. Gulf Oil Corporation,* 500 F.2d 659, 667 (5th Cir. 1974) ("The prospect of a damage award multiplied three-fold should provide an incentive for private parties to instigate costly and uncertain litigation, thus supplementing Governmental enforcement. If, as everyone seems to assume, mentioning the trebling provisions would lower jury verdicts then the very purpose for which the provision is designed may be frustrated."),

*cert. denied,* 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975); *Noble v. McClatchy Newspapers,* 533 F.2d 1081, 1091 (9th Cir. 1975) (An instruction informing the jury of the trebling provision "is an invitation to the jury to negate Congress' determination that actual damages should be trebled in order to deter antitrust violations and encourage private enforcement of the antitrust laws."), *vacated on other grounds,* 433 U.S. 904, 97 S.Ct. 2966, 53 L.Ed.2d 1088 (1977). We believe that just as with the trebling provision, informing the jury of the existence of § 1988 fees invites the jury to negate the important purposes Congress intended § 1988 to serve.

Also analogous is the collateral source rule, which provides that a tortfeasor's liability will not be diminished by funds obtained by the plaintiff from a third party (such as insurance proceeds). Because the jury should not take the collateral source into account, courts have frequently held that the prejudice to the plaintiff from informing the jury of the source's existence outweighs any probative value. In *Eichel v. New York Central R.R.,* 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963), the Court upheld a trial court's refusal to admit evidence that the plaintiff was receiving disability under the Railroad Retirement Act of 1937. The Court noted that "[i]t has long been recognized that evidence showing that a defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact." *Id.* at 255, 84 S.Ct. at 317.

As with § 1988 and treble damages, the fear is that a jury, informed of plaintiff's right to additional funds, will view the money as a windfall and take steps to offset it. *See In re Air Crash Disaster near Chicago, May 25, 1979,* 803 F.2d 304, 309 (7th Cir.1986) ("Evidence of plaintiff's receipt of insurance benefits carries with it the risk that a jury, in contravention of the collateral benefit rule, will reduce the plaintiff's

---

**4.** 15 U.S.C. § 15(a) (1988) states in part: "[A]ny person who shall be injured in his business or his property by reason of anything forbidden in the antitrust laws ... shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorneys' fee."

pecuniary damages by the amount of insurance payments that he has received."); *Doucet v. Gulf Oil Corp.*, 783 F.2d 518, 523 (5th Cir.1986) (court's instruction, which referred to plaintiff's workman's compensation, erroneous because it "interjected improper considerations into the jury deliberations"), *cert. denied*, 479 U.S. 883, 107 S.Ct. 272, 93 L.Ed.2d 249 (1986).

Therefore, we hold that as with information about the right to treble damages or the receipt of funds from a collateral source, the right of a prevailing plaintiff to attorneys' fees under § 1988 should play no part in the jury's deliberation. The information has no relevance to the task before the jury, and might lead the jury to improperly adjust its findings in contravention of the legislative purpose behind § 1988. By telling the jury of the existence of § 1988, the judge erred. Also erroneous was the judge's decision to let the defendants, in their closing argument, comment on § 1988 for the purpose of attacking Brooks's motives.

### III

■ Brooks requests that on remand we reassign this case. Only under "unusual circumstances" will we remand to a new judge. *United States v. Sears, Roebuck & Co.*, 785 F.2d 777, 780 (9th Cir. 1986), *cert. denied*, 479 U.S. 988, 107 S.Ct. 580, 93 L.Ed.2d 583. We find that such circumstances do not exist. Although the judge issued some erroneous rulings and clearly was frustrated at times by the actions of Brooks's counsel, we do not believe that this evidences "an attitude or state of mind that belies an aversion or hostility of a kind or degree that a fair-minded person could not entirely set aside when judging certain persons or causes." *Matter of Yagman*, 796 F.2d 1165, 1182 (9th Cir.1986) (quoting *United States v. Conforte*, 624 F.2d 869, 881 (9th Cir.), *cert. denied*, 449 U.S. 1012, 101 S.Ct. 568, 66 L.Ed.2d 470 (1980)), *cert. denied*, 484 U.S. 963, 108 S.Ct. 450, 98 L.Ed.2d 390 (1987). We therefore decline to order that this case be remanded to a different judge.

### IV

Brooks also challenges three other jury instructions. Unlike his claim involving the instruction on fees, we find these claims to be meritless. We address each in turn.

### A

Brooks first argues that the district court erred by failing to give an adequate instruction regarding what constitutes a *Terry* stop. The judge truncated an instruction proposed by Brooks, eliminating language stating that a stop based upon mere curiosity, rumor, or hunch is unlawful.

■ A party is not entitled to have the jury instructed in the particular language of his choice. *Perazza v. Delameter*, 722 F.2d 1455, 1457 (9th Cir.1984). The jury instruction is adequate if it enables the jury to determine the issue intelligently. *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 212 (9th Cir.1988).

■ Brooks argues that the truncated version "wiped out" the gravamen of his case, that defendants had stopped the vehicle based upon a hunch rather than legally founded suspicion. Contrary to his claims, however, the instruction was consistent with this theory. Judge Williams instructed the jury that:

> In order to justify an investigative stop or detention, the circumstances known or apparent to the officer must include *specific and articulable facts* causing him to suspect that, one, some activity relating to crime has taken place, or is occurring or about to occur, and, two, the person he intends to stop or detain is involved in that activity.

> Not only must he subjectively entertain such a suspicion, but *it must be objectively reasonable* for him to do so. The facts must be such as would cause any reasonable police officer in like position drawing, when appropriate, on his training and experience, to suspect that some criminal activity and the same involvement by the person in question.

(emphasis added). This language precludes stops founded on curiosity, rumor, or

hunch. Thus, the jury instruction was adequate.[5]

### B

Brooks next argues that the judge improperly instructed the jury that specific intent was required to find a § 1983 violation. Brooks interprets the instructions incorrectly. The instruction to which Brooks points refers to punitive damages.

Brooks also argues that the district court erred by failing to instruct the jury that specific intent was *not* a required element for awarding nominal or actual damages. Reviewing the jury instructions as a whole, it is clear that such an instruction was not necessary. The only mention of specific intent was in the context of punitive damages, and it was in contrast to the alternatives of nominal and actual damages.[6] It was clear from this instruction that a finding of specific intent was not required in order to award nominal or actual damages.

### C

Finally, Brooks argues that the district court clearly conveyed the impression that nominal damages were not permitted. A review of the jury instructions shows that this claim is meritless.

Judge Williams told the jury that "in a civil rights case such as this, the law does not require the plaintiff to show damage to himself as a consequence of a violation of his civil rights if, indeed, you find unanimously that a violation occurred." He also explained that Brooks's attorney had stated that the principal purpose of the suit was to vindicate a denial of constitutional rights

and that he would be satisfied with a nominal award.

Most importantly, when the judge listed the four alternatives for the jury, the first one was "to return a verdict for nominal damages for plaintiff as his counsel asked you to do." Judge Williams thus made it clear to the jury that nominal damages could be awarded.

### V

■ After the jury verdict in favor of the defendants, the judge granted the defendants' motion for attorneys' fees. Because the same issue may be presented after retrial, we address this issue. We review the award of attorneys' fees for abuse of discretion. *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir.1990). Attorneys' fees should be granted to the defendant only when the action was "frivolous, unreasonable, or without foundation." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980).

The Supreme Court has explained that attorneys' fees are not normally awarded to prevailing defendants. As the Court explained in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978),

> it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.... Even when the law or the facts appear questionable or unfavorable at the outset, a

---

**5.** Contrary to Brooks's claim, his proposed jury instruction was not an exact quotation from *Terry*. Instead, the Supreme Court stated, in reference to language very close to that contained in the jury instruction in this case, "Anything less would invite intrusions on constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches...." *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968). Thus, the Court itself recognized that a hunch was merely an example of an impermissible reason for a stop. The reason why a hunch was impermissible was contained in the Court's earlier language, which was included in this jury instruction.

**6.** The judge listed three alternatives verdicts if the jury found in favor of the plaintiff:

> One, to return a verdict for nominal damages for plaintiff as his counsel asked you to do; or
>
> Two, to bring in a verdict for plaintiff for a larger than nominal amount of damages; or
>
> Three, to bring in a verdict for plaintiff giving him punitive damages in addition to the other damages, but only if you unanimously conclude that the actions of the officers were intentional violations of plaintiff's constitutional rights, and were either maliciously or wantonly or oppressively done.

party may have an entirely reasonable ground for bringing a suit.

*Id.* at 421–22, 98 S.Ct. at 700–01. *See also Hughes*, 449 U.S. at 14, 101 S.Ct. at 178 ("The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees.").

We have denied defendants' attorneys' fees even in some cases that never reached the jury. In *Thomas v. Douglas*, 877 F.2d 1428, 1434 & n. 8 (9th Cir.1989), although the court upheld a summary judgment because it concluded that the evidence was insufficient for a reasonable jury to be able to return a verdict in plaintiff's favor, we still denied the defendant's motion for attorneys' fees. In *Barry*, we reversed an award of attorneys' fees even though defendant received a directed verdict, stating that "[a]ttorneys' fees in civil rights cases should only be awarded to a defendant in exceptional circumstances." *Barry*, 902 F.2d at 773.

■ Brooks argues that here, where this court overturned a directed verdict against him on essentially the same facts, the case cannot be deemed frivolous. This reasoning appears persuasive. In *Jensen v. Stangel*, 762 F.2d 815 (9th Cir.1985), in upholding the denial of attorneys' fees to the defendant, we noted that the district court had denied the defendant's motions to dismiss and for summary judgment. "These rulings suggest that Jensen's claims were not without merit." *Id.* at 818. *See also Miller v. Los Angeles County Bd. of Educ.*, 827 F.2d 617, 620 (9th Cir.1987) ("A court should be particularly chary about awarding attorney's fees where the court is unable to conclude that the action may be dismissed without proceeding to trial."); *Soderbeck v. Burnett County*, 752 F.2d 285, 295 (7th Cir.), *cert. denied*, 471 U.S. 1117, 105 S.Ct. 2360, 86 L.Ed.2d 261 (1985) (If the plaintiff succeeded in making out a case strong enough to withstand a motion for directed verdict, the case was not frivolous.)

The findings of the district court indicate that it abused its discretion in awarding attorneys' fees. In Finding Number Four, the court concluded that "[t]he totality of the evidence produced at the first trial was sufficient to convince any reasonable trier of fact that plaintiff's claim was specious and beyond belief...." The court continued in Finding Number Six: "Defendant and his counsel had a clear opportunity to reevaluate the merits of the cause of action after the court granted a motion for a directed verdict during the first trial. Despite the obvious weakness of the evidence, the plaintiff insisted on pressing ahead." Thus, the court concluded that fees were appropriate.

Finding Number Four flies in the face of our reversal of the directed verdict. We concluded that "[w]hether the Deputies could lawfully order Brooks from the car and search him and the vehicle hinges on whether the initial detention was lawful.... If the jury believed Brooks's testimony, it could conclude that the Deputies lacked reasonable suspicion to stop the vehicle, which would constitute an unreasonable seizure under the fourth amendment." Implicit in this decision was a determination that a reasonable jury could believe Brooks.

Thus, while the district court saw the events of the first trial as a warning to Brooks that his case was frivolous, Brooks may have seen the reversal as an indication that he potentially had a case. The district court awarded fees to the defendants because Brooks did exactly what this court said he could do. The granting of attorneys' fees therefore was an abuse of discretion.

## VI

Although the jury instructions regarding the *Terry* stop, the necessity of finding specific intent, and the availability of nominal damages were adequate, we conclude that by instructing the jury and allowing the defense to comment regarding the potential availability of attorneys' fees, the district court abused its discretion. The award of attorneys' fees to the defendants was also an abuse of discretion.

**REVERSED AND REMANDED.**