Craig S. ADDISON, et al.,

v.

Charles H. BRAUD, Jr.

No. Civ.A. 95–808–A.

United States District Court,
M.D. Louisiana.

Dec. 1, 1998.

Garth J. Ridge, Baton Rouge, Louisiana, for plaintiffs.

James L. Piker, Baton Rouge, Louisiana, for defendant.

## RULING ON MOTION FOR NEW TRIAL

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion by plaintiffs for new trial pursuant to Fed. Rule Civ.P. 59(a). Defendant has filed an opposition. There is no need for oral argument.

### I

Craig and Anita Addison instituted this action against defendant, Charles H. Braud, Jr., claiming violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq. Plaintiffs claimed that Braud, acting as a collections attorney, violated the Act by filing a lawsuit in the City Court of Baton Rouge in connection with a consumer debt incurred by plaintiffs. Plaintiffs were residents of the Town of Baker, not the City of Baton Rouge. Both municipalities are located in East Baton Rouge Parish. Defendant allegedly violated the Act by filing suit in the wrong venue.[1]

The court granted a motion by defendant for summary judgment and dismissed the action. The United States Court of Appeals for the Fifth Circuit reversed the judgment of this court and granted partial summary judgment in favor of plaintiffs on the venue violation by defendant.

A jury trial (demanded by plaintiffs) was held on August 19, 1998, relative to defendant's "bona fide error" defense and "additional" (punitive) damages.[2] In answer to special interrogatories, the jury found that defendant acted in good faith and did not intentionally violate the Act but that he failed to maintain procedures reasonably adapted to avoid the venue violation. The jury additionally awarded each plaintiff zero dollars in "additional" damages.

Plaintiffs move for new trial on the basis that the court erred in allowing defense counsel to argue that a possible award of attorney's fees rather than vindication of plaintiffs' consumer rights, was the motivating or "driving force" for this lawsuit. In both opening and closing arguments, counsel for defendant commented that one effect of awarding statutory damages would be to "invoke the attorney's fee provision" of the Act. Objections by counsel for plaintiffs were overruled in both instances. Following the second objection, the court instructed the jury as follows:

THE AMOUNT OF ATTORNEY'S FEES, IF ANY TO BE AWARDED IS A MATTER THAT WILL BE ADDRESSED TO THE JUDGE ONLY. THE JURY WOULD NOT BE INVOLVED IN FIXING ANY ATTORNEY'S FEES.

I WILL TELL YOU, HOWEVER, AS A MATTER OF LAW, THAT NO ATTORNEY'S FEES ARE AUTHORIZED TO BE AWARDED BY THE COURT UNDER THIS STATUTE UNLESS YOU, AS MEMBERS OF THIS JURY, RETURN A VERDICT OF MONEY DAMAGES IN FAVOR OF PLAINTIFFS. IN OTHER WORDS, IF YOU RETURN, UNDER THE LAW, A VERDICT OF MONEY DAMAGES IN FAVOR OF THE PLAINTIFFS, THAT WILL TRIGGER AUTHORIZATION FOR THE COURT TO AWARD ATTORNEY'S FEES TO COUNSEL FOR THE PLAINTIFFS. IF YOU RETURN NO DAMAGES, THEN NO ATTORNEY'S FEES WILL BE AWARDED, ACCORDING TO THE STATUTE. (Transcript, pp. 12–13.)

■ Plaintiffs do not challenge the correctness of the law as explained to the jury. The Fifth Circuit has expressly held that a plaintiff must prove either actual or "additional" damages to be eligible for an award of attorney's fees. *Johnson v. Eaton,* 80 F.3d 148 (5th Cir.1996). Rather, plaintiffs argue that the issue of attorney's fees was a matter solely for the court to decide and a factor

---

1. Under 15 U.S.C. § 1692i, any consumer collection suit must be brought in the "judicial district or similar legal entity" in which the consumer resides or signed the contract. Since the Addisons did not reside in or sign the contract in Baton Rouge, that section of the Act was technically violated when the defendant filed the suit in the City Court of Baton Rouge.

2. Plaintiffs admit that they had suffered no actual damages.

that was totally irrelevant to the jury's determination of "additional" damages. Plaintiffs contend that they are entitled to a new trial on the issue of punitive damages because the jury was improperly allowed to focus on an issue that was highly prejudicial to them and the court's attempt at curative instructions exacerbated the matter.

## II

Some preliminary observations:

██ Federal court jurors are not children—all are adults. Judges and lawyers should not treat them as children when they are summoned to court. As adults, jurors are not required to render a verdict in a vacuum. In every jury trial, the presiding judge charges jurors to use "reason and common sense" in reaching their verdict. See Fifth Circuit Pattern Jury Instruction 2.18 (1998). If jurors do not know the legal effect of their verdict, they can hardly follow the judge's instructions. Thus, in this court's view, informed jurors perform better than uninformed or misinformed jurors.

The reasoning of Judge Rubin in *Porche v. Gulf Mississippi Marine Corp.,* 390 F.Supp. 624 (E.D.La.1975) is an appropriate reminder of what we are about:

"[T]he better view is that a jury is entitled to know what effect its decision will have.... The jury is not to be set loose in a maze of factual questions, to be answered without intelligent awareness of the consequences...." 390 F.Supp. at 632 (citations omitted).

## III

According to plaintiffs, the situation now presented is analogous to that in *Brooks v. Cook,* 938 F.2d 1048 (9th Cir.1991). In *Brooks,* the plaintiff brought suit under 42 U.S.C. § 1983, claiming violations of his constitutional rights during the course of a traffic stop. The jury found in favor of the defendants. On appeal, plaintiff argued that the verdict had been impermissibly tainted by defense counsel's summation and the court's jury instructions which informed the jury that plaintiff would be eligible for attorney's fees if he prevailed. The Ninth Circuit

held that the trial court abused its discretion because it invited the jury to consider a factor that had no relevance to the jury's determination of liability and damages. The Ninth Circuit found that this information might prejudice the plaintiff and undermine the policies behind § 1988.

Plaintiffs additionally rely on Fifth Circuit authority (cited by the Ninth Circuit in the *Brooks* case) holding that it is error for a court to instruct a jury in an anti-trust case that the amount awarded by the jury will subsequently be trebled by the court. See, *Pollock & Riley, Inc. v. Pearl Brewing Co.,* 498 F.2d 1240, 1242 (5th Cir.1974) ("The justifiable fear of anti-trust plaintiffs is that the juries will adjust the damage award downward or find no liability, therefore thwarting Congress's purpose, because of some notions of a windfall to the plaintiff."), cert. denied, 420 U.S. 992, 95 S.Ct. 1427, 43 L.Ed.2d 673 (1975); and *Lehrman v. Gulf Oil Corp.,* 500 F.2d 659 (5th Cir.1974), cert. denied, 420 U.S. 929, 95 S.Ct. 1128, 43 L.Ed.2d 400 (1975).

Finally, as noted by the Ninth Circuit in *Brooks,* non-disclosure of the receipt of funds by plaintiff from a collateral source serves a similar purpose. The fact that a plaintiff has received funds from collateral sources, i.e., a third party, may be withheld from the jury because the potential prejudice to the plaintiff from informing the jury of the collateral source may outweigh any probative value.

There are circumstances, however, where third party payments to a party are relevant; for example, where a third party has paid workers compensation to plaintiff and is subrogated to plaintiffs' claim against a tort feasor. In such cases, jurors are routinely told not only the fact of such payments but also the amount so that the verdict (if in favor of plaintiff) may be apportioned by the court. The "collateral source rule" is a rule of substantive law, not a rule of evidence. It simply prohibits granting credit to a defendant, typically a tort feasor, for payments made to plaintiff by a third party, i.e., medical payments made to plaintiff under his own insurance policy, the premiums for which were paid by plaintiff. Whether evidence of such payments should be excluded from con-

sideration by a jury is a different question and depends, like so much in the law, "upon the circumstances."

In opposition, defendant argues that the reasoning of the Ninth Circuit in *Brooks* is flawed and should not be followed here. Instead, defendant contends that the better rule is to inform the jury regarding the legal effects of its award. In support of this general principle, defendant cites cases dealing with whether the judge should advise a jury about the results that may flow from findings as to comparative negligence. See, *Porche v. Gulf Mississippi Marine Corp.*, 390 F.Supp. 624 (E.D.La.1975) (explaining the effect of the finding of 45% contributory negligence on the part of the decedent upon the award—"If your total award is $100,000, the plaintiffs will receive $55,000.") See also, *Perricone v. Kansas City Southern Ry. Co.*, 704 F.2d 1376 (5th Cir.1983) (affirming, in the absence of contemporaneous objection, a supplemental instruction which informed the jury that the plaintiff would not recover any damages if the plaintiff was found to be more than 50% negligent).

Defendant additionally relies upon *Vinieris v. Byzantine Maritime Corp.*, 731 F.2d 1061 (2nd Cir.1984). In *Vinieris*s, a seaman claimed that the ship owner had failed to fully pay his wages. Both the ship's captain and the port captain testified that plaintiff had been paid his full wages, amounting to $1852. Plaintiff testified that he had actually received only $670 of the $1852 and that he was due wages for five additional days as well. The jury was asked to find the amount of wages owed to the plaintiff and whether wages were withheld by the ship's captain in an arbitrary manner. The latter finding triggered application of 46 U.S.C. § 596, which imposed what has been described as a "very unfair" or "harsh" penalty. When the appellate decision was written, the penalty amounted to $144,000, over 100 times more than the lost wages dispute before the jury.

The Second Circuit found that the district court had improperly excluded evidence and rejected jury instructions relating to the penalty provision, relying on the "rule of nondisclosure" of treble damages in anti-trust cases. The appellate court found that the trial court should have admitted evidence that the ship's captain was under very strict orders from his supervisors to pay earned wages because of the severe penalties imposed by the statute and the evidence thus was relevant to the captain's state of mind, as well as to the credibility of the plaintiff.

Ten years later, the Second Circuit revisited the *Vinieris* case in *HBE Leasing Corp. v. Frank*, 22 F.3d 41 (2nd Cir.1994). In holding that defense counsel was properly precluded from mentioning the treble damage and attorney fees provisions of the Racketeer Influenced and Corrupt Organizations Act (RICO), the Second Circuit found that the decision in *Vinieris* was not to the contrary. However, the court expressly refrained from deciding "whether there might be certain circumstances in which a district court could in its sound discretion permit mention to the jury of the prospect of treble damages and attorney fees." *Id.* at p. 47.

## IV

 It has been said that "[a]ny error of law, if prejudicial, is a good ground for a new trial." [3] Wright, Miller & Kane, Federal Practice and Procedure § 2805. Based upon the foregoing, plaintiffs have a creditable argument that the disclosures relating to the attorney's fees provision may have prejudiced the jury and caused it to award zero punitive damages to avoid what the jury may have viewed as a windfall in attorney's fees to the plaintiffs. However, under the circumstances of this case, the court finds that there was no error of law committed in informing the jury of the attorney's fee provision and that any prejudice to plaintiffs was offset by other considerations.

In accordance with the terms of the statute, the determination of "additional" or punitive damages involves consideration of "the frequency and persistence of noncompliance

---

**3.** The district court has broad discretion in formulating jury charges. The court's instructions to the jury must be considered as a whole. No error will be found as long as the jury is not misled, prejudiced, or confused and the charge is comprehensive and fundamentally accurate. See, *Davis v. Avondale Industries, Inc.*, 975 F.2d 169 (5th Cir.1992).

by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional...." 15 U.S.C. § 1692k(b)(1). The jury specifically found that noncompliance was unintentional. While there was some evidence that defendant had filed suit in the wrong venue in a few other instances, there was no evidence of persistent noncompliance. Moreover, the evidence overwhelmingly showed that the nature of the noncompliance in this case was more of a technicality than anything else.

Mr. Addison's trial testimony made it obvious that he did not understand the nature of the venue violation for which he was claiming damages. Mr. Addison indicated that he thought the violation stemmed from the fact that he had petitioned for bankruptcy. Mrs. Addison did not testify and did not even attend the trial. Mr. Braud's testimony established that suit could have literally been filed "across the street" in the Parish courthouse[4] rather than the Baton Rouge City Court and that he would have transferred the action to a proper court had the question of improper venue been raised by plaintiff's lawyer. While a venue violation could constitute a serious hindrance to a consumer defending a collection action, the impact upon the Addisons was insignificant, financially or otherwise. Had the suit been filed in the District Court, the Addisons would have traveled the same distance to defend the suit there as to the City Court.

Lawyer Ridge who represents plaintiffs in this federal action, also represented them in the City Court collection suit. The only pleading Lawyer Ridge filed in the City Court was a motion for extension of time within which to plead. Upon expiration of the extended time, Lawyer Ridge permitted a default judgment to be rendered against his clients. See Exh. P–1, the City Court record. Subsequently, Lawyer Ridge filed this action against Lawyer Braud on behalf of the Addisons.

Against this backdrop, the fact that there was an attorney's fee provision could explain why a lawsuit would be brought to trial for a

technical violation, i.e., it was pursued as a means of generating attorney's fees. This information bore on the nature or importance of the noncompliance to plaintiffs' and was relevant to the jury's determination of punitive damages. This court concludes that the record provides a factual basis for defendant's argument and that a reasonable jury could conclude that this action was filed more for the purpose of generating a fee for Lawyer Ridge than to vindicate any invasion of the consumer rights of the Addisons.

Moreover, the court finds that disclosure of this information did not thwart any countervailing policy behind the Act. As the Fifth Circuit observes in the *Johnson* case, lawyers should be deterred from bringing suits under the Act merely as a means of generating attorney's fees. *Johnson,* supra 80 F.3d at p. 151.

V

Accordingly, the motion by plaintiffs for new trial (doc. no. 81) is hereby DENIED.

---

4. Both courthouses are located on St. Louis Street in Baton Rouge—one on the east side of the street, the other on the west.